UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: ___3/15/2019___

RONALD E. POWELL, et al., *as trustees of The*   :
*United Food & Commercial Workers Union &*   :
*Employers Midwest Pension Fund, on behalf of that* :
*plan and other similarly situated benefit plans,*   :
  :
                       Plaintiffs,   :
  :
            -against-   :
  :
OCWEN FINANCIAL CORPORATION, et al.,   :
  :
                 Defendants.   :

-------------------------------------------------------------- X

18-CV-1951 (VSB)

**OPINION & ORDER**

Appearances:

Justin Silver Brooks (Philadelphia, PA)
Elizabeth Hardeman Shofner (Sunnyside, NY)
Guttman, Buschner & Brooks PLLC

David Charles Harrison
Scott Vincent Papp
Barbara J. Hart
Lowey Dannenberg P.C.
White Plains, NY

Michael Jason Klein
Aaron Lee Brody
Stull Stull & Brody
New York, NY
*Counsel for Plaintiffs*

Aaron Michael Rubin (New York, NY)
Claudia Wilson Frost (Houston, TX)
Kenneth Patrick Herzinger (San Francisco, CA)
Richard Andre Jacobsen, Jr. (New York, NY)
Thomas Nill Kidera (New York, NY)
Orrick, Herrington & Sutcliffe LLP
*Counsel for Defendants Ocwen Financial Corporation, Ocwen Loan Servicing, LLC, and Ocwen
Mortgage Servicing, Inc.*

Joel M. Miller
Charles Richard Jacob, III
Miller & Wrubel, P.C.
New York, NY

Isabel Polly Sukholitsky
Goulston & Storrs PC
New York, NY
*Counsel for Defendants Altisource Solutions, Inc., REALHome Services and Solutions, Inc., and Altisource Online Auctions, Inc.*

Joseph De Simone (New York, NY)
Kevin Charles Kelly (New York, NY)
Paul Whitfield Hughes (Washington, DC)
Mayer Brown LLP
*Counsel for Defendants Altisource Residential Corporation and Altisource Asset Management Corporation*

Brian Patrick Perryman (Washington, DC)
Frank G. Burt (Washington, DC)
William Glenn Merten (Washington, DC)
Katherine Leigh Villanueva (Philadelphia, PA)
Drinker Biddle & Reath LLP
*Counsel for Defendants Assurant, Inc., Standard Guaranty Insurance Company, American Security Insurance Company, Voyager Indemnity Insurance Company, and American Bankers Insurance Company of Florida*

David John Fioccola
Jessica Kaufman
Robert James Baehr
Francesca G. Cocuzza
Morrison & Foerster LLP
New York, NY
*Counsel for Defendants HomeSure Services, Inc., Cross Country Home Services, Inc., HomeSure of America, Inc., and HomeSure of Virginia, Inc.*

Christopher Russo
Traub Lieberman Straus & Shrewsbury LLP
Hawthorne, NY
*Counsel for Defendant Southwest Business Corporation*

Evan Miller (Washington, DC)
Howard Fredrick Sidman (New York, NY)
Rebekah B. Kcehowski (Pittsburgh, PA)
Jones Day
*Counsel for Defendant Wells Fargo Bank, N.A.*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Plaintiffs Ronald E. Powell, Robert O'Toole, Robert Wilson, Brian Jordan, Donald G. Schaper, and William R. Seehafer, as trustees of The United Food & Commercial Workers Union & Employers Midwest Pension Fund bring this purported class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Defendants Ocwen Financial Corporation, Ocwen Loan Servicing, LLC, Ocwen Mortgage Servicing, Inc. (collectively, "Ocwen"); Altisource Solutions, Inc., REALHome Services and Solutions, Inc., Altisource Online Auctions, Inc. (collectively, the "ASPS Subsidiaries"); Altisource Residential Corporation ("Front Yard"); Altisource Asset Management Corporation ("AAMC");[1] Assurant, Inc., Standard Guaranty Insurance Company, American Security Insurance Company, Voyager Indemnity Insurance Company, American Bankers Insurance Company of Florida (collectively, "Assurant"); HomeSure Services, Inc., Cross Country Home Services, Inc., HomeSure of America, Inc., HomeSure of Virginia, Inc. (collectively, "HomeSure"); Southwest Business Corporation ("SWBC"); and Wells Fargo Bank, N.A. ("Wells Fargo").[2] Plaintiffs allege Defendants committed misconduct with respect to the management of residential mortgages underlying two trusts in which Plaintiffs' benefit plan invested.  Plaintiffs allege claims under ERISA for breach of fiduciary duty, in violation of 29 U.S.C. §§ 1105 and 1109, and for prohibited transactions, in violation of 29 U.S.C. § 1106(b).

---

[1] The ASPS Subsidiaries, Front Yard, and AAMC are collectively referred to as "Altisource" or the "Altisource Defendants."

[2] Plaintiffs' complaint also names Altisource Portfolio Solutions, S.A. as a defendant in this action, (Docs. 1, 44); however, Plaintiffs have filed no affidavit of service on Altisource Portfolio Solutions, S.A. on the electronic docket. Because it appears that service of the summons and complaint was not made within 90 days of the filing of the original complaint in this action, Plaintiffs' claims against Altisource Portfolio Solutions, S.A. will be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) unless Plaintiffs serve Altisource Portfolio Solutions, S.A. within 30 days of the entry of this Opinion & Order.

Before me are Defendants' eight independent motions to dismiss Plaintiffs' Amended Class Action Complaint (the "FAC") for lack of standing, lack of personal jurisdiction with respect to Defendants Front Yard and AAMC, and failure to state a claim pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, Assurant's motion to dismiss Plaintiffs' complaint is GRANTED in part.  Ocwen's and Wells Fargo's motions to dismiss are converted to motions for summary judgment with respect to the two threshold merits issues identified below, and are otherwise DENIED.  Defendants' remaining motions to dismiss are also DENIED; however, Defendants will be granted leave to re-file with respect to any arguments not specifically disposed of in this Opinion & Order, following my ruling on Ocwen's and Wells Fargo's motions for summary judgment.

## I.  Factual Background[3]

Plaintiffs are six trustees of The United Food & Commercial Workers Union & Employers Midwest Pension Fund (the "UFCW Plan" or the "Plan").  In 2006, the UFCW Plan acquired Notes issued by two trusts created by subprime lender American Home Mortgage Investment Corporation ("AHMI")—AHMI Trust 2004-4 and AHMI Trust 2005-3 (collectively, the "AHMI Trusts").[4]  The assets of those trusts included securitized residential mortgages. (FAC ¶ 5.)  The secured Notes provided for payment to Noteholders of principal and interest on the mortgages that were pooled in the AHMI Trusts.[5]  (*Id.* ¶ 61.)  According to Plaintiffs, the

---

[3] The following factual summary is drawn from the allegations in the FAC, (Doc. 44), which I presume to be true for purposes of this motion, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[4] The pertinent provisions of the documents governing AHMI Trust 2004-4 and the documents governing AHMI Trust 2005-3 are virtually identical.  (*See* FAC ¶¶ 59, 62, 65, 70.)

[5] In addition to the Notes, a portion of which the UFCW Plan purchased, the AHMI Trusts also issued Certificates. (FAC ¶ 58.)

UFCW Plan's investment provided the Plan with a "beneficial ownership interest" in the securitized mortgages held in the AHMI Trusts.  (*Id.* ¶ 6.)

Pursuant to the Servicing Agreements governing the AHMI Trusts, Defendant Ocwen is the "servicer" of the securitized mortgages in those trusts.[6]  (*Id.* ¶ 7; *id.* Ex. C (AHMI Trust 2004-4 Servicing Agreement); *id.* Ex. D (AHMI Trust 2005-3 Servicing Agreement).)  The duties of mortgage servicers include sending bills and notices to homeowners, collecting payments, foreclosing on homes upon default, and maintaining and reselling foreclosed homes.  (FAC ¶ 68.)  Mortgage servicers also have the authority to engage in "loss mitigation" for mortgages in default or in danger of default, which includes the power to modify mortgages in an attempt to avoid foreclosure.  (*Id.*)  According to Plaintiffs, "Ocwen exercised sweeping, unchecked control of the management and disposition of [the] securitized mortgages" in the AHMI Trusts.  (*Id.* ¶ 8.)  The Servicing Agreement for AHMI Trust 2005-3 further designates Defendant Wells Fargo as the "master servicer" of the mortgages in that trust.  (*Id.* ¶ 14; *id.* Ex. D.)  As master servicer, Wells Fargo was responsible for supervising and overseeing Ocwen in the performance of its duties as servicer; Wells Fargo had the power to terminate Ocwen as servicer for breach of those duties.  (FAC ¶ 14.)  Wells Fargo also had a duty to prosecute legal claims for servicer misconduct on behalf of investors.  (*Id.* ¶ 16.)

Plaintiffs allege that since the 2008 financial crisis, Ocwen has engaged in rampant misconduct and self-dealing in its capacity as servicer for the AHMI Trusts.  Ocwen's alleged

---

[6] Under the Servicing Agreements, the original servicer of the mortgages in the AHMI Trusts was American Home Mortgage Servicing, Inc. ("AHMS"), a wholly owned subsidiary of AHMI.  (FAC ¶¶ 63–64.)  In November 2007, AHMS was purchased by Wilbur Ross & Co. LLC.  (*Id.* ¶ 84.)  Ocwen acquired AHMS (which had since been renamed "Homeward Residential Holdings, Inc." ("Homeward")) in December 2012.  (*Id.* ¶¶ 84–85.)  Plaintiffs allege that "Homeward and Ocwen, as successors to [AHMS], stand in the shoes of [AHMS] and assume all of the rights, powers, and liabilities of [AHMS] as servicer."  (*Id.* ¶ 87.)  Ocwen does not dispute these allegations for the purposes of its motion to dismiss.  (*See* Doc. 91, at 7 n.3).

misconduct includes:  (1) failure to apply mortgage payments accurately; (2) imposition of

unauthorized fees; (3) imposition of force-placed insurance when homeowners had adequate

coverage;[7] (4) failure to provide accurate and timely information to homeowners about loss

mitigation services; (5) referral of loans to foreclosure while homeowners pursued good-faith

loan modification efforts; (6) failure to honor in-process trial loan modifications; (7) provision of

false or misleading reasons for the denial of loan modifications; (8) improper denial of loan

modifications to eligible homeowners; and (9) filing false documents with courts and regulatory

agencies.  (*Id.* ¶ 135 (citing consent judgment entered in *Consumer Financial Protection Bureau

v. Ocwen Financial Corp.*, No. 13-cv-2025 (RMC) (D.D.C. Feb. 26, 2014), ECF No. 12).)[8]

Ocwen's history of forcing homes into foreclosure substantially devalued Plaintiffs' investment

in the residential mortgages underlying the AHMI Trusts.  (*See id.* ¶ 125 ("Foreclosures on

subprime mortgages result in the loss of more than half of the value of mortgages to investors

. . . .").)  Plaintiffs further allege that, despite receiving notice of Ocwen's failure to prudently

service mortgage loans on behalf of investors, Wells Fargo failed to properly investigate

Ocwen's reported misconduct.  (*Id.* ¶¶ 205–12.)

     The misconduct alleged in the FAC extends beyond Ocwen and Wells Fargo.  Ocwen

engaged third parties to provide ancillary services relating to the mortgages Ocwen serviced,

including home inspections, appraisals, title searches, home maintenance, and marketing of

foreclosed homes.  (*Id.* ¶ 76.)  Plaintiffs allege that Ocwen—acting in conjunction with these

---

[7] "Force-placed insurance is meant to protect against hazards that would diminish the value of the home as collateral for the mortgage, supposedly where the homeowner's own insurance has been cancelled or lapsed, or is inadequate." (FAC ¶ 171.)

[8] Plaintiffs cite various other consent orders and settlements that Ocwen has entered into with entities including the New York State Department of Financial Services, (FAC ¶¶ 136–42), the Commissioner of Business Oversight of the State of California, (*id.* ¶ 193), and a class of homeowners, (*id.* ¶ 147).  In addition, a total of thirty-one states have filed cease-and-desist orders against Ocwen.  (*Id.* ¶ 146.)

third parties—systematically charged homeowners excessive foreclosure and other ancillary fees, which were ultimately paid by the investors in the underlying mortgages. (*Id.* ¶ 13.) Many of these ancillary service arrangements existed between Ocwen and the Altisource Defendants. The Altisource "parent" company, Luxembourg corporation Altisource Portfolio Solutions, S.A., was created in 2009, when Ocwen divested to the newly formed company various fee-based business lines responsible for services including home valuations, property preservation, sale of foreclosed homes, and insurance services. (*Id.* ¶ 118.) Altisource Portfolio Solutions, S.A. then entered into long-term contracts with Ocwen, pursuant to which it provided to Ocwen—through a range of subsidiaries and affiliates—the services that Ocwen had divested. (*Id.* ¶ 151.) The Altisource Defendants allegedly charged homeowners excessive fees, as well as fees for services that were not needed or not performed. (*Id.* ¶ 162.) Plaintiffs allege that all Altisource subsidiaries and affiliates operate as a "single enterprise." (*Id.* ¶ 151.)

In addition to the Altisource Defendants, Ocwen contracted with other Defendants to provide a range of ancillary services. First, Ocwen entered into agreements with Assurant, pursuant to which Assurant provided force-placed insurance to the homeowners whose mortgages Ocwen serviced, charging premiums that were significantly higher than those imposed by other force-placed insurers. (*Id.* ¶ 173.) Assurant also imposed force-placed insurance that exceeded the value of homeowners' mortgages. (*Id.*) Assurant paid a percentage of the insurance premiums that it collected to Ocwen. (*Id.* ¶ 175.) In 2014, Ocwen replaced Assurant as its force-placed insurance vendor with Defendant SWBC. (*Id.* ¶ 176.) Finally, Ocwen worked with Defendant HomeSure to provide home warranty products and service plans to homeowners. (*Id.* ¶ 177.) Ocwen deceptively marketed those products—service agreements under which HomeSure committed, among other things, to perform certain maintenance and

repairs—to homeowners.  (*Id.* ¶¶ 178–79.)  HomeSure then divided with Ocwen the payments for the home warranty products it sold.  (*Id.* ¶ 180.)

Ultimately, Defendants' misconduct led to avoidable foreclosures, thereby causing the securitized mortgages in which the UFCW Plan invested to suffer "enormous unnecessary losses."  (*Id.* ¶¶ 10, 132.)

## II.   <u>Procedural History</u>

Plaintiffs filed their original Class Action Complaint on March 5, 2018, (Doc. 1), and filed their FAC on May 17, 2018, (Doc. 44).  The FAC alleges claims on behalf of the UFCW Plan's participants and beneficiaries, as well as classes of (1) trustees of benefit plans subject to the protections of ERISA, which invested in residential mortgage-backed securities ("RMBS") trusts serviced by Ocwen; and (2) the subset of those trustees whose benefit plans invested in RMBS trusts serviced by Ocwen, for which Wells was master servicer.  (*See* FAC ¶ 20.)

The FAC alleges four claims under ERISA:  first, that Ocwen breached its fiduciary duty to the UFCW Plan, in violation of 29 U.S.C. § 1109; second, that Ocwen, Altisource, Assurant, SWBC, and HomeSure engaged in "prohibited transactions," in violation of 29 U.S.C. § 1106(b); third, that Wells Fargo breached its duty to the UFCW Plan as Ocwen's "co-fiduciary," in violation of 29 U.S.C. § 1105; and fourth, that Wells Fargo breached its fiduciary duty to the UFCW Plan by failing to prosecute legal actions for Ocwen's misconduct.  (FAC ¶¶ 238–50.)

On July 13, 2018, Defendants filed eight separate motions to dismiss the FAC.  First, all Defendants filed an omnibus motion to dismiss certain of Plaintiffs' claims for lack of class standing, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Docs. 103–04.) In addition, Defendants Ocwen, (Docs. 90–92); SWBC, (Docs. 94, 96–97); HomeSure, (Docs. 99–100); and Wells Fargo, (Docs. 105–07), moved to dismiss the FAC in its entirety for failure

to state a claim pursuant to Rule 12(b)(6). Defendants Assurant, (Docs. 88–89), and the ASPS Subsidiaries, (Docs. 98, 101–02), moved to dismiss the FAC pursuant to both Rule 12(b)(6) and for lack of standing pursuant to Rule 12(b)(1). Defendants Front Yard and AAMC moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), and for lack of personal jurisdiction, pursuant to Rule 12(b)(2). (Docs. 93, 95.) Each Defendant also joined in the other Defendants' motions to dismiss the FAC.

Plaintiffs filed an omnibus opposition to Defendants' motions to dismiss on September 18, 2018. (Docs. 117, 119.) Defendants filed their respective replies on October 18, 2018. (Docs. 126, 128–32, 134–36.) Finally, Assurant submitted a letter of supplemental authority, dated February 8, 2019, (Doc. 139), and Plaintiffs filed a response thereto on February 22, 2019, (Doc. 140).

### III.   Discussion

#### A.   *Standing*

As an initial matter, the Altisource Defendants argue that this action should be dismissed in its entirety for lack of subject matter jurisdiction because Plaintiffs lack standing to bring this lawsuit. (*See* Doc. 95, at 16–18; Doc. 102, at 22–24.) In addition, Assurant specifically challenges Plaintiffs' standing to seek prospective relief against the Assurant Defendants. (*See* Doc. 89, at 20–22.)[9]

---

[9] This analysis addresses only the argument that Plaintiffs lack standing to file suit on their own behalf—not whether Plaintiffs may also sue on behalf of a purported "class of trustees of all benefit plans that invested in securitized mortgages serviced by Ocwen." (*See* FAC ¶ 223; Docs. 103–04 (challenging Plaintiffs' standing to pursue claims regarding pension plans other than the UFCW Plan and regarding RMBS trusts other than the two AHMI Trusts in which the Plan invested).) Because I find that Plaintiffs have Article III standing to bring ERISA claims relating to the two AHMI Trusts in which the UFCW Plan holds Notes, "the more prudent approach is to analyze class standing at the class certification stage" given that "a case or controversy between the parties" has been established. *Moses v. Apple Hosp. REIT Inc.*, No. 14CV3131DLISMG, 2016 WL 8711089, at *4 (E.D.N.Y. Sept. 30, 2016). I therefore agree that Defendants' challenge to Plaintiffs' class standing is premature, (*see* Doc. 117, at 79), and I will address that challenge if and when this case proceeds to the class certification stage.

### 1.  Applicable Law

Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  To satisfy the requirements of Article III standing, a plaintiff must establish three elements:

> (1) the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (internal quotation marks omitted).  "Each element of standing 'must be supported with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'"  *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  "In considering a Rule 12(b)(1) motion, all facts alleged in the complaint are taken as true and all reasonable inferences drawn in Plaintiffs' favor."  *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2009 WL 151168, at *2 (S.D.N.Y. Jan. 21, 2009).  Dismissal is inappropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."  *Id.* (quoting *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004)).

### 2.  Application

Defendants do not argue that Plaintiffs have failed—with respect to the AHMI Trusts—to plead an injury in fact caused by Defendants' alleged conduct that would be redressed by a decision in Plaintiffs' favor; rather, they argue that Plaintiffs lack standing because the Trust

Indentures governing the AHMI Trusts vest the right to sue in the Indenture Trustees.  Both of the relevant Trust Indentures contain a "Granting Clause" in which the AHMI Trusts assigned to The Bank of New York and Deutsche Bank National Trust Company as Indenture Trustees, "all of the [AHMI Trusts'] right, title and interest in . . . all present and future claims" concerning the mortgage loans.  (FAC Ex. A at 6–7; *id.* Ex. B at 9.)  Defendants contend that this assignment divests Plaintiffs of standing to bring the instant claims, which allege that Defendants violated ERISA by mismanaging the underlying mortgage loans.  Plaintiffs counter that the assignment only extends to potential contractual claims held by the AHMI Trusts and does not encompass Plaintiffs' independent statutory claims.  These ERISA claims are specific to Plaintiffs given Plaintiffs' status as benefit plan trustees whereas the AHMI Trusts, in their own right, are not entitled to invoke the protections of ERISA.  *See* 29 U.S.C. § 1132(a)(2) (authorizing only employee benefit plan participants, beneficiaries, fiduciaries, and the Secretary of Labor to bring civil actions for breach of fiduciary duty); *id.* § 1132(a)(3) (authorizing only plan participants, beneficiaries, and fiduciaries to seek to enjoin any practices violating ERISA).  Accordingly, Plaintiffs contend that the AHMI Trusts "could not assign what [they] did not possess," (Pls.' Opp'n 77),[10] and that the Granting Clause did not extinguish Plaintiffs' right to bring ERISA claims predicated on Defendants' squandering of pension plan assets.

Plaintiffs have the better of the argument here.  Although they assert that Defendants mismanaged the underlying mortgages—claims concerning which the Trusts assigned to the Indenture Trustees—Plaintiffs' claims arise from the fiduciary duties that Ocwen allegedly owed Plaintiffs by virtue of ERISA.  Therefore, not only are Plaintiffs' claims not contractual in nature

---

[10] "Pls.' Opp'n" refers to Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss, filed September 18, 2018, (Doc. 117).

but they invoke statutory rights that other holders of Notes in the AHMI Trusts might not possess.

Moreover, each of the cases Defendants cite in support of their position that the Granting Clause extinguished Plaintiffs' right to sue under ERISA holds only that a party lacks standing to bring contractual claims that are subject to a valid granting clause. For instance, in *National Credit Union Administration Board v. U.S. Bank National Ass'n*, plaintiff—a liquidating agent for a number of credit unions—alleged breach of contractual, statutory, and common law duties against the trustees of 98 trusts that issued RMBS. No. 14-cv-9928 (KBF), 2016 WL 796850, at *1 (S.D.N.Y. Feb. 25, 2016). The standing issue before the district court was whether "plaintiff had assigned away its right to pursue the breach of contract claim asserted here." *Id.* Judge Forrest concluded that, based on an assignment provision in the trust agreements similar to the provision at issue here, plaintiff lacked standing to pursue its contract claims; she then analyzed plaintiff's common law and statutory claims "on the merits" and dismissed them not on standing grounds but rather for failure to state a claim. *Id.* at *10–11. On appeal, the Second Circuit affirmed Judge Forrest's decision with respect to the contract claims and did not address the common law or statutory claims. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 245 (2d Cir. 2018).

Similarly, in *Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon*, the district court determined that plaintiff issuers of collateralized debt obligations ("CDOs") lacked standing to assert breach of contract claims against RMBS trustees because they had assigned away their right to such claims in the CDO indentures. *See* No. 16 Civ. 1597 (NRB), 2017 WL 1103033, at *3–5 (S.D.N.Y. Mar. 21, 2017). The court, however, expressly noted that plaintiffs retained standing to bring extracontractual claims for breach of fiduciary duty because the

indentures' grant to the CDO indenture trustee of "all . . . right, title and interest" in plaintiffs' property "did not explicitly reference any related tort claims." *Id.* at *5 (internal quotation marks omitted); *see also House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13 Civ. 519(RJS), 2014 WL 1383703, at *16 (S.D.N.Y. Mar. 31, 2014) (dismissing plaintiff's contract claims and concluding that "[a] party that has assigned away its rights under a contract lacks standing to sue for breach of that contract").

Defendants also rely on *Phoenix Light SF Ltd. v. U.S. Bank National Ass'n*, in which Judge Forrest concluded that plaintiffs, who allegedly held certificates in certain RMBS trusts, were "contractually barred from directly asserting claims as to the certificates at issue [because the issuer had assigned] such claims . . . to the indenture trustees."  No. 14-cv-10116 (KBF), 2015 WL 2359358, at *2 (S.D.N.Y. May 18, 2015).  In *Phoenix Light*, plaintiffs had brought breach of contract, breach of fiduciary duty, and statutory claims; Judge Forrest, however, expressly "decline[d] to resolve" the question of whether "plaintiffs' statutory and tort claims should be dismissed."  *Id.* at *1.  Therefore, it is not clear that her conclusion as to standing extended beyond plaintiffs' contract claims.[11]  I am persuaded by the distinction between contractual and statutory claims and I find that the language of the AHMI Trust Indentures did not divest Plaintiffs of standing to bring the instant ERISA claims.

However, for each form of relief Plaintiffs seek, they "must demonstrate standing separately."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  Assurant has challenged Plaintiffs' Article III standing specifically with respect to their request for prospective

---

[11] After plaintiffs amended their complaint, Judge Forrest determined that plaintiffs had successfully established standing; plaintiffs' non-contract claims were eventually dismissed on the merits.  *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116 (KBF), 2016 WL 1169515, at *6–7, 9 (S.D.N.Y. Mar. 22, 2016).

relief against Assurant.  (*See* Doc. 89, at 20–22; *see also* FAC at 57 (seeking to enjoin Assurant and others from paying "any consideration in connection with a transaction that involves any mortgage that is a benefit plan asset").)  Because the FAC alleges that Ocwen replaced Assurant with SWBC as its force-placed insurance vendor in 2014—approximately four years before Plaintiffs filed their original complaint in this action, (FAC ¶ 176)—Assurant contends that it could not possibly pose a risk of future injury to Plaintiffs.

To establish standing to pursue injunctive relief, a plaintiff must demonstrate a "real or immediate threat" of *future* injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239.  Assurant is correct that the FAC is entirely devoid of allegations of ongoing wrongdoing by Assurant.  (*See* Doc. 89, at 21.)  Rather, all allegations corroborate the notion that Assurant's provision of force-placed insurance to Ocwen ceased years ago.  (*See* FAC ¶¶ 170–76, 183.)  Moreover, in 2015, Assurant and Ocwen entered into a judicially-approved class action settlement in which they committed to cease the very financial arrangements about which Plaintiffs now complain.  (*See* Doc. 89, at 21–22 (citing FAC ¶ 147, which describes a settlement in which Ocwen resolved allegations that it had, *inter alia*, "charged excessive premiums on force-placed insurance").)  For both of these reasons, Plaintiffs cannot demonstrate a likelihood that they will be harmed by Assurant in the future in a similar way.  *See Nicosia*, 834 F.3d at 239.  I therefore agree that Plaintiffs lack standing to seek prospective relief against Assurant.

### B.   *Personal Jurisdiction*

A second threshold issue I must address before considering Defendants' motions to dismiss Plaintiffs' claims on the merits is Defendants Front Yard and AAMC's motion to dismiss for lack of personal jurisdiction.  (*See* Doc. 95, at 4–6.)

### 1.  Applicable Law

When a defendant moves for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).  On a motion under Rule 12(b)(2), when the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need show only a *prima facie* case."  *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp*., 751 F.2d 117, 120 (2d Cir. 1984).  Under this standard, a plaintiff "must plead facts which, if true, are sufficient in themselves to establish jurisdiction as to each defendant."  *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 251 (S.D.N.Y. 2013) (internal quotation marks omitted).  A plaintiff "can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *Whitaker v. Am. Telecasting Inc*., 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks omitted).  Thus, a court may consider materials outside the pleadings when deciding a motion to dismiss for lack of personal jurisdiction.  *Hsin Ten Enter. USA, Inc. v. Clark Enters*., 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

The exercise of specific jurisdiction over a nonresident defendant[12]—which focuses on the "relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S.

---

[12] Plaintiffs do not argue that Front Yard and AAMC are subject to general jurisdiction, which applies only where a defendant's contacts with the forum state "are so continuous and systematic as to render them essentially at home" there.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted).

277, 283–84 (2014)—requires a two-step analysis.  *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).  First, courts "evaluate the quality and nature of the defendant's contacts with the forum . . . under a totality of the circumstances test." *Id.* (internal quotation marks omitted).  Second, if the defendant purposefully established minimum contacts with the forum, the court must be satisfied that exercising jurisdiction comports with due process pursuant to "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Straub*, 921 F. Supp. 2d at 252 ("If [minimum] contacts are found, the Court may assert personal jurisdiction so long as it is reasonable to do so under the circumstances of the particular case." (internal quotation marks omitted)).

### 2.  Application

Here, Plaintiffs' claims arise under ERISA, which authorizes nationwide service of process.  *See* 29 U.S.C. § 1132(e)(2) (permitting service "in any [judicial] district where a defendant resides or may be found").  When a civil case arises under federal law and a federal statute authorizes nationwide service of process, courts often consider "contacts with the United States as a whole" as the "relevant contacts for determining personal jurisdiction."  *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017 WL 1169626, at *40 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks omitted); *see also Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 589 (S.D.N.Y. Sept. 25, 2017) (observing that "several courts in this district addressing federal claims with national service of process . . . have applied the 'national contacts' test," and collecting cases).  "The rationale underlying this national contacts approach is that when the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's

nation." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015
WL 6243526, at *23 (S.D.N.Y. Aug. 4, 2015, as amended Oct. 20, 2015) (internal quotation
marks omitted).  While the Second Circuit has "not yet decided th[is] issue," it has observed that
several other circuits have followed the national contacts approach.  *Gucci Am., Inc. v. Weixing
Li*, 768 F.3d 122, 142 n.21 (2d Cir. 2014).

Thus, I assume for the purposes of this motion that the relevant contacts are Front Yard's
and AAMC's contacts not with New York but with the United States as a whole.  Front Yard and
AAMC are both based in the United States or one of its territories:  Front Yard—a real estate
investment trust that acquires, owns, and manages single-family rental properties throughout the
United States, (FAC ¶ 154)—is incorporated in Maryland and has a principal place of business in
Christiansted, U.S. Virgin Islands, while AAMC is both incorporated and headquartered in the
U.S. Virgin Islands, (*id.* ¶¶ 33–34).  I therefore find that both Front Yard and AAMC easily
satisfy the national contacts test.

Front Yard and AAMC appear to concede that application of the national contacts test
would establish personal jurisdiction here.  (*See* Doc. 131, at 6–7; *see also Cohen v. Facebook,
Inc.*, 252 F. Supp. 3d 140, 153 (E.D.N.Y. 2017) ("[S]atisfaction of due process as to federal
statutes with nationwide service provisions depends only on a party's contact with the United
States *as a whole*." (emphasis in original)).)  Instead, Front Yard and AAMC argue that they are
not proper ERISA defendants and that the national contacts test therefore should not apply.
(Doc. 131, at 6–7.)  However, they both concede that under certain circumstances, ERISA
permits liability against non-fiduciaries (like Front Yard and AAMC) with respect to prohibited
transactions.  (*See* Doc. 95, at 13–14; *see also Mimms v. PricewaterhouseCoopers, LLP*, No. 11
Civ. 30(DAB), 2012 WL 527205, at *4 (S.D.N.Y. Feb. 16, 2012) ("[C]ourts recognize the right

of beneficiaries to bring suits against non-fiduciaries, but only in instances where the fiduciary

itself has breached its duty to the beneficiary, and the non-fiduciary is aware of the breach.").)

Front Yard and AAMC's contention that they are not proper defendants under ERISA thus goes

to the merits of Plaintiffs' claims against them.  Accordingly, I find that, at this stage of the

litigation, Plaintiffs have pleaded sufficient facts to make out a *prima facie* case of personal

jurisdiction over Front Yard and AAMC.  *See Straub*, 921 F. Supp. 2d at 251.

### C.      *Failure to State a Claim*

All Defendants have moved to dismiss the FAC pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim.  (*See* Docs. 88, 90, 93, 94, 98, 99, 105.)

### 1.  Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  In considering a motion to dismiss, a court must accept as true all well-pleaded facts

alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *See*

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not

make "detailed factual allegations," but it must contain more than mere "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  Although all allegations contained in the complaint are assumed to be

true, this tenet is "inapplicable to legal conclusions."  *Id.*

A district court is limited in the material it may consider in deciding a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  "First, it may consider assertions made

within 'the four corners of the complaint itself.'"  *Russomanno v. Murphy*, No. 09 Civ.

8804(RJH), 2011 WL 609878, at *3 (S.D.N.Y. Feb. 16, 2011) (quoting *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001)).  A court may also consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in [the complaint] by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  For a document to be considered "incorporated by reference," the complaint must contain a "clear, definite and substantial reference" to that document.  *Helprin v. Harcourt*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003).  "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner, Inc.*, 440 F. App'x. 7, 9 (2d Cir. 2011).  "Multiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013).

If a document is not incorporated by reference, "the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network*, 62 F.3d at 72); *see also Russomanno*, 2011 WL 609878, at *3 ("The Second Circuit has emphasized that a plaintiff[']s *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court[']s consideration of the document on a dismissal motion; mere notice or possession is not enough." (emphasis in original)).  Finally, a court may consider any matters that are subject to judicial notice, including publicly filed documents.  *See Kramer v. Time–Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (on motions to dismiss, judicial notice may be taken of documents required to be publicly filed); *Fullerton Ave. Land Dev. Ltd. v. Cianciulli*,

48 F. App'x 813, 814 n.1 (2d Cir. 2002) (referencing the Second Circuit's "well-established rule that a district court may rely upon publicly filed records in deciding a motion to dismiss").

If a motion to dismiss introduces additional materials outside the pleadings, Federal Rule of Civil Procedure 12(d) specifies that a court may either exclude those materials or convert the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Chambers*, 282 F.3d at 154.  "Courts have considerable discretion in deciding between these two options." *Allen*, 2013 WL 2413068, at *4.  Where a court elects to convert a 12(b)(6) motion into a motion for summary judgment so that it may consider materials outside the pleadings, it must provide the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Chambers*, 282 F.3d at 154 (explaining that because the district court did not exclude extrinsic documents, it was "obligated to . . . give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56").  The Second Circuit has emphasized that district courts should "adhere strictly" to this procedure and not bypass it "for the sake of expediency."  *Kopec v. Coughlin*, 922 F.2d 152, 154, 155 (2d Cir. 1991).

## 2.  Application

Defendants raise various grounds for dismissing the FAC on the merits but my analysis in this Opinion & Order is confined to two threshold issues—both of which relate to whether there is a fiduciary relationship between Ocwen and the UFCW Plan—the resolution of which will determine whether the FAC may proceed against any of the Defendants named therein.

Each of the four counts alleged in the FAC is premised on the existence of a fiduciary relationship between Ocwen, as servicer of the mortgages in the AHMI Trusts, and the UFCW Plan, as an investor in those trusts.  Under ERISA, "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any authority or control respecting management or disposition of plan assets.'"  *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d. Cir. 1997) (quoting 29 U.S.C. § 1002(21)(A)(i), (iii)).  Thus, Plaintiffs may only proceed on their ERISA claims if two conditions are satisfied:  first, the mortgages underlying the AHMI Trusts must qualify under ERISA as "plan assets" of the UFCW Plan; and second, Ocwen, as the servicer of those "plan assets," must qualify under ERISA as a "fiduciary" of the UFCW Plan.  In their motions to dismiss—primarily those motions filed by Ocwen and Wells Fargo, (*see* Docs. 90–91, 105–06)—Defendants contend that the FAC fails to establish either of these two necessary factual predicates for Plaintiffs' claims.[13]

With respect to the first question—that is, whether the mortgages in the AHMI Trusts constitute "plan assets" of the UFCW Plan—regulations promulgated by the United States Department of Labor (the "DOL") set forth the definition of "plan assets."  *See* 29 U.S.C. § 1002(42) ("The term 'plan assets' means plan assets as defined by such regulations as the Secretary may prescribe . . . .").  Those regulations provide that, "[g]enerally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity."  29 C.F.R. § 2510.3-

---

[13] Wells Fargo also alleges that Plaintiffs' lawsuit is barred due to Plaintiffs' failure to comply with Section 5.06 of the Trust Indentures governing the Notes purchased by the UFCW Plan, which prohibits a Noteholder from instituting any judicial proceeding "with respect to this Indenture" unless the Noteholder first provides written notice to the Indenture Trustee of a "continuing Event of Default."  (FAC Ex. A § 5.06; *id.* Ex. B § 5.06.)  As an initial matter, it is not clear that Defendants' alleged misconduct qualifies as an "Event of Default" as that term is defined in the Trust Indentures.  (*See, e.g.*, FAC Ex. B, at 161; Pls.' Opp'n 75 ("Plaintiffs are *not* alleging events of default or contractual breaches." (emphasis in original)).)  Moreover, as discussed above, *see supra* Part III.A.2, Plaintiffs' claims are not contract claims but are instead statutory claims premised on Defendants' alleged violations of ERISA. I therefore find that the Trust Indentures' "no action" clauses do not bar the instant suit.

101(a)(2).  Here, the UFCW Plan has invested in another entity (i.e., the AHMI Trusts) and,

therefore, as a general matter, the UFCW Plan's assets would include its investment in the

AHMI Trusts (i.e., the Notes themselves) but would not include the trusts' underlying assets (i.e.,

the underlying residential mortgages).  However, the DOL regulations go on to provide an

exception to the general rule that would ordinarily preclude the underlying mortgages from

qualifying as "plan assets":  "in the case of a plan's investment *in an equity interest* of an entity

that is n[ot] a publicly-offered security . . . its assets include both the equity interest and an

undivided interest in each of the underlying assets of the entity."  *Id.* (emphasis added).  Thus, if

the Notes held by the UFCW Plan constitute an "equity interest" in the AHMI Trusts, the

underlying mortgages in those trusts may qualify as "plan assets."  The term "equity

interest" means "any interest in an entity other than an instrument that is treated as indebtedness

under applicable local law and which has no substantial equity features."  *Id.* § 2510.3-

101(b)(1).  The regulations further specify that a "beneficial interest in a trust" qualifies as an

"equity interest."  *Id.*

The second question—that is, whether Ocwen may be considered a fiduciary of the

UFCW Plan—must be answered in the negative if the mortgages in the AHMI Trusts do not

qualify as plan assets.  *See LoPresti*, 126 F.3d at 40 ("A person is a fiduciary with respect to a

plan . . . to the extent that he or she exercises any authority or control respecting management or

disposition of plan assets." (emphasis omitted) (internal quotation marks omitted)).  But even if

the mortgages do constitute "plan assets," Ocwen may only be held liable as a fiduciary if

Ocwen exercised "authority or control respecting management or disposition" of those

mortgages.  29 U.S.C. § 1002(21)(A).  Courts have held that where the duties delegated to an

entity are "ministerial, [rather than] discretionary in nature," that entity does not meet the

definition of an ERISA fiduciary under 29 U.S.C. § 1002(21)(A).  *McMorgan & Co. v. First Cal. Mortg. Co.*, 916 F. Supp. 966, 973 (N.D. Cal. 1995); *see also Robbins v. First Am. Bank of Va.*, 514 F. Supp. 1183, 1189 (N.D. Ill. 1981) ("To determine whether the bank is an ERISA fiduciary, the court must examine whether the bank had discretionary duties, since those duties are within the coverage of the statute while purely ministerial functions are not.").

The FAC repeatedly alleges that Plaintiffs hold a "beneficial ownership interest"—which amounts to an "equity interest," *see* 29 C.F.R. § 2510.3-101(b)(1)—in the AHMI Trusts.  (*See, e.g.*, FAC ¶¶ 6, 86.)  The FAC also asserts that Ocwen "exercised sweeping, unchecked control of the management and disposition of securitized mortgages, and was a fiduciary under ERISA to the benefit plans that invested in those mortgages."  (*See id.* ¶¶ 8, 95–97.)  Ocwen and Wells Fargo, however, have filed numerous exhibits in conjunction with their motions to dismiss, which cast considerable doubt on Plaintiffs' ability to support these allegations.[14]  These exhibits include the Notes issued by the two AHMI Trusts in which the UFCW Plan invested, (Doc. 92, Exs. A–B); the Trust Indentures governing the Notes, (*id.* Exs. C–D); tax opinion letters relating

---

[14] In addition to challenging whether the mortgages in the AHMI Trusts constitute "plan assets," both Ocwen and Wells Fargo contend that Plaintiffs have not met their pleading burden because they have failed to allege either (i) that the securities at issue were not "publicly-offered" or (ii) that equity participation in the securities by benefit plan investors like the UFCW Plan was "significant"—both of which must be true in order for the underlying mortgages to qualify as "plan assets" under ERISA.  (*See* Doc. 91, at 14–18; Doc. 106, at 18–19; *see also* 29 C.F.R. § 2510.3-101(a); *id.* § 2510.3-101(f)(1) (noting that participation by "benefit plan investors is 'significant' . . . if . . . 25 percent or more of the value of any class of equity interests in the entity is held by benefit plan investors")).

The parties dispute whether the FAC must contain these details or whether Defendants must prove them as affirmative defenses because they are "exceptions to the plan asset rule."  (*See* Pls.' Opp'n 40–43.)  Defendants, however, identify no case in which a court has dismissed a complaint solely due to the omission of these two allegations.  In fact, at least one court has found that plaintiffs satisfied their pleading obligation where their complaint contained "no allegations suggesting that [the securities at issue] were [] publicly offered," even though the complaint lacked any affirmative allegations that the securities were *not* publicly offered.  *See Gandhi v. Sitara Capital Mgmt., LLC*, 689 F. Supp. 2d 1004, 1015 (N.D. Ill. 2010).  The same is true of Plaintiffs' complaint here.  Moreover, other courts have identified ERISA's requirement that benefit plan investor participation be "significant" as an exception to the general rule governing the definition of "plan assets."  *See, e.g.*, *Perez v. Koresko*, 86 F. Supp. 3d 293, 375 (E.D. Pa. 2015) (rejecting defendants' argument that plaintiff failed to establish that "ERISA-covered plans and IRAs own[ed] 25% or more of the equity interests in the Trusts" and noting that "[o]ne who claims the benefit of an exception from the prohibition of the statute has the burden of proving that his claim comes within the exception").  I therefore conclude that Plaintiffs have sustained their pleading burden.

to the proper tax treatment of the Notes, (*id.* Exs. E–F); the Certificates issued by the two AHMI

Trusts, which Plaintiffs did not acquire, (*id.* Exs. G–H); the Servicing Agreements governing the

AHMI Trusts, (*id.* Exs. I–J); the UFCW Plan's Form 5500 filings for 2012 through 2015, (Doc.

107, Exs. D–G); the Amended and Restated Trust Agreements governing the Certificates issued

by the AHMI Trusts, (Doc. 129, Exs. K–L); and the prospectus supplements for the AHMI

Trusts, (*id.* Exs. M–N).  Defendants argue that these documents are "integral" to the FAC

"because they set forth the terms and conditions of the [UFCW] Plan's investment in the Notes."

(Doc. 91, at 5 n.1; *see also* Doc. 106, at 4 n.2.)

      Ocwen and Wells Fargo are correct that I may appropriately consider certain of these

documents at the motion-to-dismiss stage.  Some of the documents—i.e., the Trust Indentures

and Servicing Agreements—are also attached as exhibits to the FAC.  (*See* Doc. 44, Exs. A–D;

*see also Chambers*, 282 F.3d at 152 (noting that a court may consider "any written instrument

attached to [the complaint] as an exhibit").)  Other documents, including the Notes, are integral

to the FAC:  the Notes represent the UFCW Plan's investment in the AHMI Trusts and Plaintiffs

"rel[y] heavily" upon the "terms and effect" of the Notes in the FAC.  *See Chambers*, 282 F.3d at

153.  In addition, a handful of the documents—i.e., the UFCW Plan's annual Form 5500 filings

with the Department of Labor—are publicly filed.[15]  *See Fullerton Ave.*, 48 F. App'x at 814 n.1

(noting that district courts may rely upon publicly filed documents in deciding a motion to

dismiss).

      However, other materials that Ocwen and Wells Fargo have submitted in support of their

respective motions are outside the bounds of what a court may properly consider on a motion to

---

[15] Form 5500 forms filed since January 1, 2010 are available on the DOL's website.  *See* Form 5500/5500-SF Filing Search, U.S. Dep't of Labor, https://www.efast.dol.gov/portal/app/disseminatePublic?execution=e2s1 (last visited Mar. 13, 2019).

dismiss.  Perhaps most importantly, Ocwen attached to its motion to dismiss tax opinion letters prepared by the law firm Thacher Proffitt & Wood LLP, which state that, "for federal income tax purposes the Notes . . . will be classified as debt instruments."  (Doc. 92-5, at 4; Doc. 92-6, at 3.) These letters cannot be fairly characterized as "integral" to the FAC.  *See Allen*, 2013 WL 2413068, at *6 ("A document is only integral to a complaint . . . where the complaint relies heavily upon its terms and effect." (internal quotation marks omitted)).  Not only does the FAC not rely on—or mention—these tax opinions, but it is also unclear whether Plaintiffs ever received copies of these letters prior to the filing of the instant action.  (*See, e.g.*, Doc. 92-5, at 5 (prohibiting dissemination of the tax opinion letter except under certain, limited circumstances).) Moreover, even if Plaintiffs had previously received the tax opinions, "mere notice or possession is not enough" to render those documents integral to the FAC.  *Russomanno*, 2011 WL 609878, at *3.  The FAC also neither relies on, nor references in any detail, the Certificates issued by the AHMI Trusts—which Plaintiffs did not acquire and which, unlike Plaintiffs' Notes, bestow "a fractional undivided equity interest in the [] Trust . . . , the property of which consists primarily of the Mortgage Loans," (*see* Doc. 92-7, at 3; Doc. 92-8, at 3)—or the Amended and Restated Trust Agreements and prospectus supplements, (Docs. 129-1–129-4), which Defendants submitted to support their position that the UFCW Plan's Notes, as distinguished from the Certificates, should be characterized as debt instruments.  I therefore conclude that these documents also cannot be deemed integral to the FAC.

Thus, under Federal Rule of Civil Procedure 12(d), I must either (1) exclude these documents; or (2) treat Ocwen's and Wells Fargo's motions not as motions to dismiss pursuant to Rule 12(b)(6) but rather as motions for summary judgment under Rule 56, and allow the parties a reasonable opportunity to present additional pertinent information.  Because I find that

these documents may shed substantial light on the threshold factual questions at issue in this litigation—in particular, the question of whether the underlying mortgages in the AHMI Trusts qualify as "plan assets," which is a necessary prerequisite to Plaintiffs' successful maintenance of this action—I hereby exercise my discretion to convert Ocwen's and Wells Fargo's motions to dismiss into motions for summary judgment so that I may properly consider this additional, probative information.  Plaintiffs, Ocwen, and Wells Fargo are therefore directed to engage in limited discovery with respect to the following issues:  (1) whether the underlying mortgages in the AHMI Trusts qualify as "plan assets" of the UFCW Plan, pursuant to 29 CFR § 2510.3-101;[16] and, if so, (2) whether Ocwen, as the servicer of those mortgages, qualifies as a fiduciary of the UFCW Plan, pursuant to 29 U.S.C. § 1002(21)(A).  *See Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009) (holding that plaintiff was entitled to notice and an opportunity to take discovery before the district court converted defendant's motion for judgment on the pleadings into a summary judgment motion).

The conversion of Ocwen's and Wells Fargo's motions is limited to these two issues. The remaining arguments raised by Ocwen and Wells Fargo have either been addressed and rejected herein, *see supra* nn. 13–14, or relate only to a limited subset of Plaintiffs' claims (e.g., argument that Plaintiffs' "choses in action" claim must fail, (*see* Doc. 106, at 19–21), or that ERISA's statute of limitations bars certain of Plaintiffs' claims, (*see* Doc. 91, at 24–25)).  Ocwen and Wells Fargo will be given an opportunity to raise the latter set of arguments in the future,

---

[16] In its motion to dismiss, Wells Fargo contends that a requirement set forth in the Trust Indentures that Noteholders must treat the Notes as debt, rather than equity, independently bars Plaintiffs' claims. (*See* Doc. 106, at 21–24 (citing Doc. 44-2, §§ 4.09, 4.15).)  This issue, however, is a subset of the broader question of whether the mortgages in the AHMI Trusts qualify as "plan assets" under ERISA, and is better suited to disposition on summary judgment. *Cf. AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 735–36 (2d Cir. 2010) (affirming grant of summary judgment for defendants, in part because plaintiff companies, who had "repeatedly [adopted one position] in both the transaction documents and in tax and regulatory filings," "c[ould] not now seriously" take the opposite position).  I will therefore address the issue in my decision relating to Wells Fargo's motion for summary judgment.

should Plaintiffs establish that they may invoke the protections of ERISA to challenge

Defendants' alleged wrongdoing.  *See, e.g.*, *In re Elysium Health-Chromadex Litig.*, No. 17 Civ.

7394 (CM), 2018 WL 4907590, at \*7 (S.D.N.Y. Sept. 27, 2018) (converting motion to dismiss to

motion for summary judgment with respect to one issue and otherwise denying the motion).

## IV.   Conclusion

For the foregoing reasons, Assurant's motion to dismiss the FAC, (Doc. 88), is

GRANTED IN PART, to the extent that Plaintiffs may not seek prospective relief against

Assurant.  The Altisource Defendants' motions to dismiss, (Docs. 93, 98), are DENIED IN

PART, to the extent that they challenge Plaintiffs' standing and personal jurisdiction over Front

Yard and AAMC.  Defendants Ocwen's and Wells Fargo's motions to dismiss, (Docs. 90, 105),

are also DENIED IN PART, to the extent that they challenge Plaintiffs' failure to allege that the

securities at issue were not "publicly-offered" or that benefit plan investor participation in the

securities was "significant."  Wells Fargo's motion to dismiss is further DENIED IN PART, to

the extent it alleges that the Trust Indentures' "no action" clauses bar Plaintiffs' lawsuit.

Defendants Ocwen's and Wells Fargo's motions to dismiss the FAC, (Docs. 90, 105), are

hereby converted to motions for summary judgment pursuant to Federal Rule of Civil Procedure

56 with respect to the following two issues:  (1) whether the underlying mortgages in the AHMI

Trusts qualify as "plan assets" of the UFCW Plan; and, if so, (2) whether Ocwen qualifies as a

fiduciary of the UFCW Plan.  Plaintiffs, Ocwen, and Wells Fargo are directed to meet and confer

regarding the scope of and schedule for limited discovery on these two threshold issues.  Within

30 days of the date of this Opinion & Order, they shall submit a proposed Case Management

Plan outlining their proposed schedule for limited discovery and supplemental briefing relating

to Ocwen's and Wells Fargo's motions for summary judgment.

Because resolution in Defendants' favor of either of the threshold merits issues raised by Ocwen's and Wells Fargo's motions would dispose of this action in its entirety, the remaining portions of Defendants' motions to dismiss the FAC, (Docs. 88, 90, 93, 94, 98, 99, 103, 105), are DENIED WITHOUT PREJUDICE, with leave to re-file following the disposition of Ocwen's and Wells Fargo's motions for summary judgment.

The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 88, 90, 93, 94, 98, 99, 103, and 105.

SO ORDERED.

Dated: March 15, 2019
        New York, New York

Vernon S. Broderick
United States District Judge