**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD E. POWELL, *et al*., as trustees of The United Food & Commercial Workers Unions & Employers Midwest Pension Fund, on behalf of that plan and other similarly situated benefit plans,<br><br>   *Plaintiffs*,<br><br>      v.<br><br>OCWEN FINANCIAL CORPORATION, *et al*.,<br><br>      *Defendants*. | Case No. 1:18-cv-01951 (VSB) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................1

ARGUMENT

  I.   LEGAL STANDARD FOR SUMMARY JUDGMENT......................................................4

  II.  THE CERTIFICATES AND NOTES ARE "PLAN ASSETS" IN WHICH THE
      PLAN INVESTED.........................................................................................................6

         A.  An Employee Benefit Plan's "Plan Assets" Include Underlying Assets of
            an Entity if Its Investment in The Entity Is an Undivided Ownership
            Interest in Property or Beneficial Interest in a Trust .........................................6

         B.  The Mortgages That Underlie the Pass-Through Certificates Are Plan
            Assets Because the Certificates Expressly Confer a Beneficial Ownership
            in the Pertinent Certificate Trusts in Which the Plan Is Invested......................8

              1. The CFSB Trust .......................................................................................8

              2. The MASTR Trust ....................................................................................9

              3. The Goldman Sachs Trust.......................................................................10

         C.  Legal Authorities Uniformly Hold That Plan Assets That Back
            Pass-Through Certificates Are Plan Assets .....................................................12

         D.  The Mortgages That Underlie the Notes Are Also Plan Assets Under the
            Look-through Rules ........................................................................................16

          E.  Plaintiffs' Investments Have Substantial Equity Features..............................19

CONCLUSION.................................................................................................................22

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................................... 5
*Carver v. The Bank of New York Mellon*, NO. 15-CV-,
  2017 WL 1208598 (S.D.N.Y. Mar. 31, 2017) ............................................ 15
*Faber v. Metropolitan Life Insurance Co.*,
  648 F.3d 98 (2d Cir. 2011) ......................................................................... 3, 14
*Fay v. Oxford Health Plan*,
  287 F.3d 96 (2d Cir. 2002) ........................................................................... 4, 5
*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000) .............................................................................. 5
*In re Halpin*,
  566 F.3D 286 (2d CIR.2009) ........................................................................ 14
*Kalda v. Sioux Valley Physician Partners, Inc.*,
  481 F.3D 639 (8th Cir. 2007) ...................................................................... 14
*Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*,
  400 F. SUPP. 3D 7 (S.D.N.Y. 2019) ........................................................... 4, 5
*Massachusetts Mutual Life Insurance Co. v. Russell*,
  473 U.S. (1985) ............................................................................................ 6, 8
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................................ 5
*Morales v. Quintel Entm't, Inc.*,
  249 F.3D 115 (2d Cir. 2001) ........................................................................... 5
*Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago v. Bank of N.Y. Mellon*,
  775 F.3D 154 (2d Cir. 2014) ................................................................... 15, 16
*Secretary U.S. Dept. of Labor v. Koresko*,
  646 FED. APPX 230 (3d Cir. 2016) ........................................................... 3, 15
*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ...................................................................................... 14

**STATUTES**

29 U.S.C. §1001(B) ............................................................................................. 6
29 U.S.C. § 1001 ................................................................................................. 1
29 U.S.C. § 1002(21)(A)(I) ................................................................................. 6
29 U.S.C. § 1002(42) ....................................................................................... 2, 6
29 U.S.C. § 1104 ................................................................................................. 6
29 U.S.C. § 1106 ................................................................................................. 6
29 U.S.C. § 1106(B)(3) ....................................................................................... 6

**RULES**

FED. R. CIV. P. 56(A) .......................................................................................... 4

FED. R. CIV. P. 56(C)(1) ............................................................................................................ 5

**REGULATIONS**

29 C.F.R. §2510.3-101(A)(2) .................................................................................................. 2, 7
29 C.F.R. §2510.3-101(B)(1)................................................................................................... 3, 4
29 C.F.R. § 2510.3-101(B) ........................................................................................................ 7
29 C.F.R. § 2510.3-101(A)(2) AND (C) ................................................................................... 7
29 CFR § 2510.3-101 ................................................................................................. 2, 7, 10, 12
51 FED. REG. 41262, 41262-63 (DOL NOVEMBER 13, 1986) ......................................... 17, 19

**OTHER AUTHORITIES**

44 FED. REG. 50363, 50364 (DOL AUGUST 28, 1979) (DOL AUG. 28, 1979) ..................... 17

# INTRODUCTION

This is an action for civil enforcement under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. for breach of fiduciary duty. Plaintiffs submit this memorandum in support of Plaintiffs' motion for partial summary judgment on the question whether securitized mortgages in which The United Food & Commercial Workers Unions & Employers Midwest Pension Plan (the "UFCW Plan" or "Plan") invested are assets of the Plan (hereinafter, the "Plan Asset Issue"). Plaintiffs are the trustees of the Plan and have brought this putative class action on behalf of the working families that depend upon investments in securitized mortgages for retirement security and benefits. Plaintiffs assert claims "on behalf of a class of trustees of all benefit plans that invested in securitized mortgages serviced by Ocwen," and "on behalf of a class of trustees of all benefit plans that invested in securitized mortgages serviced by Ocwen for which Wells was master servicer."[1]

The gist of Plaintiffs' claim is that: (1) benefit plans invest in securitized mortgages through investments familiarly called "residential mortgage-backed securities," or "RMBS"; (2) the securitized mortgages are "plan assets" over which Ocwen exercises authority and control as servicer; (3) ERISA imposes a rigorous fiduciary duty on anyone who exercises authority or control over plan assets; and (4) Ocwen breached that duty. [2]

---

[1] Unless otherwise stated, all defined terms have the meaning set forth in Plaintiffs' Second Amended Complaint ("SAC"). *See* Dkt. No. 200.

[2] The Court previously converted Ocwen's and Wells Fargo's motions to dismiss into motions for summary judgment following limited discovery with respect to two issues: "(1) whether the underlying mortgages in the AHMI Trusts qualify as 'plan assets' of the UFCW Plan; and, if so, (2) whether Ocwen qualifies as a fiduciary of the UFCW Plan." *See* Dkt. No. 150 at 27. Plaintiffs only move for summary judgment on the Plan Assets issue in this brief. Plaintiffs will address fiduciary status in full when opposing Defendants' summary judgment brief addressing fiduciary status in accordance with the operative briefing schedule. *See* Dkt. Nos. 201, 202.

The present brief focuses on Plaintiffs' argument that the RMBS issued by six trusts serviced by Ocwen are "plan assets" as defined by 29 CFR § 2510.3-101.[3]  As discussed in more detail below and in Plaintiffs' accompanying Statement of Facts,[4] Plaintiffs invested in pass through certificates issued by three of these trusts and notes issued by three of these trusts.  All of these investments are plan assets for the following reasons.

First, whether an investment is a "plan asset" or equity investment under ERISA is not assessed pursuant to colloquial understandings.  Even classification pursuant to generally accepted principles in the investment community does not answer this question for ERISA purposes.  *See, e.g.,* Exhibit A, Declaration of James S. Kaplan ("Kaplan Decl.") ¶¶ 1, 5, 10-12, 14.  Rather, Congress and the Department of Labor expressly defined "plan assets" by statute and regulation to effectuate ERISA's goals.  Pursuant to statutory directives by Congress, *e.g.* 29 U.S.C. § 1002(42), the Department of Labor (the "DOL" or "Department") defined plan assets expansively in 29 C.F.R. §2510.3-101, C.F.R.  Where an employee benefit plan holds an "equity interest" in another entity that is "neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940" its "plan assets" include both its investment and "an undivided interest in each of the underlying assets of the entity."  29 C.F.R. §2510.3-101(a)(2).

Further, this regulation – also known as the "Look Through Rule" – is expansive.  It expressly states that "[a] profits interest in a partnership, an undivided ownership interest in

---

[3] This action initially focused on two trusts in which Plaintiffs invested.  Pursuant to a series of decisions by the Court, and under the Second Amended Complaint, six trusts in which Plaintiffs invested are now before the Court on this motion.  *See* Dkt. Nos. 193, 200, 201, 202.

[4] Plaintiffs submit their Statement of Facts as the Rule 56 Statement and do submit both a Rule 56 statement and separate statement of facts.

property and a beneficial interest in a trust *are* equity interests."  29 C.F.R. §2510.3-101(b)(1) (emphasis added).

The DOL has directed that an assessment of assess plan asset status is determined under "ordinary notions of property rights." *Infra* pp. 12-14.  The Second Circuit and other appellate courts have afforded deference to the DOL, adopting the "ordinary notions of property rights" standard and holding that this standard calls for an assessment of the nature of an investment by reference to the governing and offering documents controlling the terms of that investment.  *E.g. Faber v. Metropolitan Life Insurance Co.*, 648 F.3d 98, 105-06 (2d Cir. 2011); *Secretary U.S. Dept. of Labor v. Koresko*, 646 Fed. Appx 230, 236-40 (3d Cir. 2016); *see also infra* pp. 12-14. Here, the governing and offering documents for the three certificate trusts in which the Plan is invested expressly state that investment in these certificates confers an undivided beneficial interest in the trusts. The note trusts are functionally equivalent. Moreover, in an advisory opinion, the DOL expressly held that pass-through certificates indistinguishable from those at issue here represent a beneficial interest in the trust and thus constitute equity interests within the meaning of the plan assets regulation.

Under the precedent of the DOL and principles espoused by the DOL and adopted by the Second Circuit, the language in the governing documents controls and establishes that the Plan held an "equity interest" by virtue of its investment in the certificates and notes and accordingly establishes that the underlying securitized mortgages are plan assets.

In discovery, Defendants have focused on whether the notes and certificates in which Plaintiffs invested have "substantial equity features", and Plaintiffs expect their briefing to do the same.  This is a separate and discrete basis under the Look Through Rule by which an employee benefit plan may hold an equity interest in another entity even if its investment is not one of

these three types expressly identified by DOL. The Rule provides that the "term equity interest means any interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features." 29 C.F.R. §2510.3-101(b)(1).

Although Plaintiffs' investments do have substantial equity features, the Court need never resolve this alternative basis for finding the investments to be plan assets. A determination that investment in the certificates and notes conferred an undivided ownership interest or beneficial interests in the trusts is dispositive and establishes as a matter of law that the underlying securitized mortgages are plan assets of the Plan.[5]

For these reasons, Plaintiffs respectfully asks the Court to hold that Plaintiffs have established that the securitized mortgages underlying the six trusts set forth in Second Amended Complaint are Plan Assets.

## ARGUMENT

## I.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The standards for granting full or partial summary judgment under FED. R. CIV. P. 56(A) are well-settled.   "Summary judgment is appropriate when 'the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 13–14 (S.D.N.Y. 2019) (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002)). "[T]he dispute about a material fact is 'genuine[ ]' . . . if the evidence is such that a

---

[5] Plaintiffs briefly discuss certain substantial equity features of the Plan's investments in Section II.E but do not provide significant detail because Plaintiffs do not need to satisfy this independent basis to establish the investments are plan assets under the Look Through Rule. Plaintiffs anticipate briefing this issue in greater detail in their opposition to Defendants briefing, where they also anticipate addressing any exceptions to the Look Through Rule argued by Defendants.

reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (quoting *Anderson*, 477 U.S. at 248).

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present such evidence that would allow a jury to find in his favor. *Anderson*, 477 U.S. at 256; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Mason* Tenders, 400 F. Supp. 3d at 13 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." *Id.* (quoting FED. R. CIV. P. 56(c)(1)).[6]

---

[6] The same standard applies "where, as here, the parties filed cross-motions for summary judgment." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citations and quotations omitted). Each "party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

## II.    THE CERTIFICATES AND NOTES ARE "PLAN ASSETS" IN WHICH THE PLAN INVESTED

A principal purpose of ERISA is to protect property in which ERISA plans invest from mismanagement and self-dealing, and to subject anyone with authority or control over such property to a rigorous fiduciary duty.  29 U.S.C. §1001(b). "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than the rights of an individual beneficiary." *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 142 (1985).[7]

### A.    An Employee Benefit Plan's "Plan Assets" Include Underlying Assets of an Entity if Its Investment in The Entity Is an Undivided Ownership Interest in Property or Beneficial Interest in a Trust

As this Court explained (Dkt. No. 150, at 26), the statute does not define "plan assets," but assigns that task to the Secretary of Labor. 29 U.S.C. § 1002(42) ("[T]he term 'plan assets' means plan assets as defined by such regulations as the Secretary may prescribe.").[8] The

---

[7] The concern was not theoretical: corrupt pension officials took substantial "finders' fees" for very low interest loans to build Las Vegas hotels and casinos. *See* W. Turner, *Union Loans: Mob's Hold on Casinos*, New York Times (April 3, 1986), Exhibit 1. The murder of Joseph Yablonski, a union dissident who criticized the management of his union's pension plan, "propelled ERISA through Congress." P. Schneider and B. Pinheiro, *ERISA: A Comprehensive Guide*, § 1.03, at 1-7 (2011), Exhibit 2.

[8] Although not immediately before the Court in Plaintiffs' instant brief, Plaintiffs' claims center on Defendants' breach of fiduciary duty in connection with management of Plaintiffs' plan assets. The ERISA definition of "fiduciary" includes any person "who exercises . . . authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i). The statute imposes on anyone with such authority or control a duty of prudence and of undivided loyalty. 29 U.S.C. § 1104. The statute also forbids as *per se* breach of fiduciary duty certain "prohibited transactions" with inherent risk of self-dealing. 29 U.S.C. § 1106. The statute creates a blanket prohibition on any consideration from third parties to any fiduciary in transactions that

Department of Labor ("DOL" or "the Department") defined plan assets expansively in 29 C.F.R. §2510.3-101. The regulation includes a "look-through rule" to encompass assets of entities that are not "primarily engaged . . . in the production or sale of a product or service," but are vehicles for "the investment of capital." 29 C.F.R. § 2510.3-101(a)(2) and (c). When a benefit plan invests in an "equity interest of an entity" that is principally a vehicle for the investment of capital, "its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity . . . . Therefore, any person who exercises authority or control respecting the management or disposition of such underlying assets . . . is a fiduciary of the investing plan." *Id.* § 2510.3-101(a)(2).

The regulation defines "equity interest" as "a profits interest in a partnership, an undivided ownership interest in property and a beneficial interest in a trust are equity interests." 29 C.F.R. § 2510.3-101(b).

The mortgages and other underlying assets of the six Trusts at issue are plan assets. The pertinent documents for the pass-through certificates ***expressly*** delineate the mortgages and other assets that back the pass-through certificates as assets of benefit plan investors. Similarly, the governing documents of the note Trusts confer a beneficial interest in the Trust to noteholders. Additionally, the notes are functionally equivalent.  Although presented as investments in the debt of special purpose vehicles that issue the notes and deposit mortgage pools in indenture trusts, they are – at heart – investments in the mortgages and other assets of the trust the same as pass-through certificates.

---

involve assets of the plan. 29 U.S.C. § 1106(b)(3). Many of Plaintiffs' claims here are for violation of that "anti-kickback" provision.

**B.      The Mortgages That Underlie the Pass-Through Certificates Are Plan Assets Because the Certificates Expressly Confer a Beneficial Ownership in the Pertinent Certificate Trusts in Which the Plan Is Invested**

The relevant trust documents—including the offering documents, governing documents, and certificates themselves—state repeatedly that investors in pass-through certificates hold a beneficial ownership interest in the assets of the trust. There is no language to the contrary in any relevant document.  That is dispositive for purposes of determining that mortgages underlying the certificates are plan assets.

1.      *The CSFB Trust*

The Prospectus Supplement for the Credit Suisse First Boston ("CSFB") Mortgage Pass-Through Certificates, Series 2003-27 (the "CSFB Trust") states:

> The depositor will establish a trust, pursuant to a pooling and servicing agreement, dated as of November 1, 2003. . . . On the closing date, the depositor will deposit the pool of mortgage loans described below into the trust. ***Each certificate will represent a partial ownership interest in the trust***.

Exhibit 3, CSFB Prospectus Supplement at S-10, WF_POWELL_000037517 (emphasis added).

Under the heading "Assets of the Trust," the CSFB Prospectus Supplement further states: "***The certificates will evidence the entire beneficial ownership interest in the trust.***" *Id.* at S-84 (emphasis added). The CSFB Prospectus provides:

> Ownership of the mortgage or contract pool included in the trust fund for a series of certificates may be evidenced by one or more classes of certificates, which may consist of one or more subclasses, as described in the prospectus supplement for each series of certificates. ***Each certificate will evidence the undivided interest, beneficial interest or notional amount specified in the related prospectus supplement in a mortgage pool***.

Exhibit 3, CSFB Prospectus at 4, WF_POWELL_000037683 (emphasis added).

Similarly, the Pooling and Servicing Agreement for the CSFB Trust creates a trust fund, the corpus of which includes mortgage loans and related property. The Trustee "***holds or will***

***hold [the assets] included in the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders.*** Exhibit 4, CSFB PSA Section 2.02 at 57.

The Prospectus for the CSFB Trust, under the heading "Plan Assets Regulation," acknowledges that the assets of the Trust are plan assets of benefit plans that acquire certificates:

> The DOL has issued the Plan Assets Regulation. Unless an exception from the "plan asset" treatment is available under the Plan Assets Regulation or elsewhere in ERISA, ***an undivided portion of the assets of the trust fund will be treated, for purposes of applying the fiduciary standards and prohibited transaction rules of ERISA . . . , as an asset of each Plan which becomes a certificateholder*** of the applicable series. This means that each Plan will be deemed to hold an undivided interest in the underlying mortgages and other assets held in trust. As a result, ***transactions involving assets of the trust fund will be subject to the fiduciary responsibility provisions of ERISA and the prohibited transaction provisions of ERISA***.

Exhibit 3, CSFB Prospectus at 97, WF_POWELL_000037776 (emphasis added).

> 2.    *The MASTR Trust*

The Prospectus for Mortgage Asset Securitization Trust 2003-5 (the "MASTR trust") states: "Mortgage Asset Securitization Transactions, Inc. from time to time will offer asset-backed pass-through certificates or notes through the prospectus and a separate prospectus supplement for each series . . . ***The certificates of the series will evidence beneficial ownership interests in the trust fund.*** The notes will evidence indebtedness of the trust fund." (emphasis added). *See* Statement of Facts ¶¶ 18-20.

The MASTR Pooling and Servicing Agreement, under the heading "Conveyance of Mortgage Loans," states:

> The Depositor concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the rights, title and interest of the Depositor in and to the Trust Fund together with all rights assigned by the Transferor.

Exhibit 6, MASTR Pooling and Servicing Agreement, Section 2.01 at 54. The form of the

certificates for Class 4-A-1, the class in which the Plan invested, states: "This Certificate is one

of a duly authorized issue of Certificates designated as Mortgage Asset Securitization

Transactions, Inc. MASTR Alternative Loan Trust 2003-5, Mortgage Pass-Through Certificates .

. . and ***representing a beneficial ownership interest in the Trust Fund created by the***

***Agreement***." *Id.* at 202 (emphasis added).

The MASTR Prospectus acknowledges the applicability of ERISA to the management of

the mortgages in which benefit plans invest by acquisition of certificates:

> The U.S. Department of Labor has promulgated regulations at 29 C.F.R. §2510.3-
> 101 defining the term 'plan assets' for purposes of applying the general fiduciary
> responsibility provisions of ERISA and the prohibited transaction provisions of
> ERISA . . . . Under these regulations, generally, ***when a plan acquires an equity***
> ***interest in an entity such as a trust fund, the Plan's assets include the investment***
> ***in the entity and an undivided interest in each of the underlying assets of the***
> ***entity***, unless certain exceptions not applicable here apply, or unless the equity
> participation in the entity by "Benefit Plan Investors" is not significant.
> . . .
> Any person who has discretionary authority or control respecting the management
> of disposition of plan assets…is a fiduciary to the investing plan. ***If the residential***
> ***loans, agency securities, mortgage securities and other assets included in the***
> ***trust fund constitute plan assets, then any party exercising management or***
> ***discretionary control regarding those assets, such as the master servicer and any***
> ***sub-servicer, may be deemed to be a Plan "fiduciary" subject to the fiduciary***
> ***requirements of ERISA and the prohibited transaction provisions of ERISA.***

Dkt. No. 177-1 at 172-73 (emphasis added).

### 3.   *The Goldman Sachs Trust*

The cover page for the Prospectus for the Mortgage Pass-Through Certificates for GSR

Mortgage Loan Trust 2005-7F (identified by Plaintiffs in the SAC as the "Goldman Sachs trust")

states:

> GS Mortgage Securities Corp. may, through one or more trusts, offer to sell
> certificates and notes in one or more series with one or more classes. ***The***
> ***certificates of a series will evidence the beneficial ownership of one or more of***

*such trusts* and the notes will evidence the debt obligations of the trust fund. Each trust or trust fund will consist primarily of . . . mortgage related assets.

Exhibit 7, Cover Page (emphasis added).

Under the heading "WHAT YOU OWN," the Prospectus Supplement states: "***Your certificate represents ownership interests in the assets of the trust fund only. All payments to you will come only from the amounts received in connection with those assets.*** Exhibit 7,** Goldman Sachs Prospectus Supplement at S-6, OCWEN_POWELL_001586953 (emphasis added). The Prospectus Supplement provides: "***Collectively the certificates represent the entire beneficial ownership interest in the Trust Fund, legal title to which will be held by the Trustee.*** Exhibit 7, Goldman Sachs Prospectus Supplement at S-51,** OCWEN_POWELL_001586977 (emphasis added).

The "PRELIMINARY STATEMENT" in the "MASTER SERVICING and TRUST AGREEMENT" for the Godman Sachs trust provides:

> The Board of Directors of the Depositor [GS Mortgage Securities Corp.] has duly authorized the formation of GSR Mortgage Loan Trust 2005-7F as a trust (the "Trust") to issue a series of securities with an aggregate initial principal balance of $422,915,796.00 to be known as the Mortgage Pass-Through Certificates, Series 2005-7F (the "Certificates"). The Trust is formed by this Trust Agreement. ***The Certificates in the aggregate evidence the entire beneficial ownership in the Trust.***

*See* Exhibit 8, OCWEN_POWELL_001587165. Under the heading "Conveyance to the Trustee," the Master Servicing and Trust Agreement provides:

> To provide for the distribution of the principal and interest on the Certificates and Interests in accordance with their terms, all of the sums distributable under this Trust Agreement with respect to the Certificates and the Interests and the performance of the covenants contained in this Trust Agreement, ***the Depositor hereby bargains, sells, conveys, assigns and transfers to the Trustee, in trust, without recourse, and for the exclusive benefit of the Holders of the Certificates, all of the Depositor's right, title and interest in and to any and all benefits accruing to the Depositor from [the pooled mortgages and related property]***.

Exhibit 8, at OCWEN_POWELL_001587176. The offering documents for the Goldman Sachs

trust acknowledge that the asset of the trust are likely assets of benefit plans that invest. Under

the heading "PLAN ASSETS," the Prospectus states:

> In DOL Regulation Section 2510.3-101 (the "PLAN ASSET REGULATIONS")
> the U.S. Department of Labor has defined what constitutes Plan assets for purposes
> of ERISA . . . . The Plan Asset Regulations provide that if a plan makes an
> investment in an "equity interest" in an entity, the assets of the entity will be
> considered the assets of such Plan unless certain exceptions apply. We can give no
> assurance that the securities will qualify for any of the exceptions under the Plan
> Assets Regulation. As a result, ***the mortgage loans may be considered the assets
> of any Plan which acquires securities, unless some administrative exemption is
> available.***

 Exhibit 8 at 100, OCWEN_POWELL_001587139 (emphasis added).

### C.    Legal Authorities Uniformly Hold That Assets That Back Pass-Through Certificates Are Plan Assets

Tellingly, when the only investments at issue in this action were notes, Ocwen and Wells

contrasted the structure of notes with the structure of pass-through certificates.  Although the

assets that back notes are also plan assets, Defendants correctly conceded that pass-through

certificates are equity interests in the trusts that hold legal title to securitized mortgages (and

incorrectly argued notes are not).  Dkt. 91, at 16-19 (Ocwen); Dkt. 106, at 15-18 (Wells). That

concession is well supported by the legal authorities.

DOL regulations define an "undivided ownership interest in property and a beneficial

interest in a trust" as an equity interest.  Applying this definition to pass-through-certificates, the

DOL has looked to "ordinary notions of property rights" to determine the nature of the

relationship.  *See, e.g.*, U.S. Dep't of Labor, Advisory Op. No. 93–14A (May 5, 1993).

 A decade after the DOL promulgated the final plan assets regulation, a company

involved in mortgage securitization asked for an advisory opinion regarding the application of

the plan assets regulation asking whether an employee benefit plan's investment in certain "pass-

through certificates" representing interests in the trust would constitute "equity interests," as that term is used in the plan assets regulation. The Advisory Opinion reads:

> You represent that [the company is] organized for the purpose of acquiring mortgage assets, establishing trusts to hold the assets, and selling interests therein. These interests are represented by various classes of certificates. . . . ***The certificates constitute, in the aggregate, the entire beneficial ownership of the trust. Your request pertains to a limited group of certificates . . . which represent interests in a mortgage pool.***

Advisory Opinion 96-23A (Department of Labor, October 23, 1996), Exhibit 9 (emphasis added).

The company contended that the pass-through certificates should not be subject to the look-through rule in the plan assets regulation because "the rights acquired by the purchaser are merely to claim a portion of the interest paid on the underlying debt instruments from the trust at the times and in the amount specified in the certificate." *Id*. The company argued that benefit plan investors in the pass-through certificates had no entrepreneurial risk because homeowners would not pay more than they owned in principal and interest on their mortgages, so there was no prospect that investors might participate in greater profits, and there was no meaningful threat of widespread nonpayment by homeowners, so investors in senior tranches would not receive less than the promised payments at the promised times (much would change in the next decade).

The DOL did not give the company the opinion that the company wanted. The Department said that the look-through rule in the plan assets regulation

> expressly provides that a 'profits interest in a partnership, an undivided ownership interest in property and a beneficial interest in a trust are equity interests . . . . Under the special look-through rule addressing beneficial interests in a trust, the nature of the underlying assets held by the trust is not determinative of the nature of the interest acquired through sale of trust certificates. Accordingly, it is the view of the Department that the pass-through certificates representing a beneficial interest in the trust . . . constitute equity interests within the meaning of the plan assets regulation.

*Id*.

The mortgages held by the trust, therefore, "should be viewed as plan assets and managed in accordance with the fiduciary provisions of ERISA." *Id.*

The pass-through certificates at issue here are identical in every pertinent respect to the pass-through certificates that the advisory opinion addressed. There is no plausible basis for a distinction. Such advisory opinions are "entitled to respect" by the courts. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944); *Faber*, 648 F.3d at 105-06 (applying *Skidmore* deference and looking to contracts governing the investments pursuant to DOL directive to assess plan asset status under "ordinary notions of property rights"); *In re Halpin*, 566 F.3d 286, 289–92 (2d Cir.2009) (applying DOL's approach and noting that "[a] commonly understood definition of 'assets' ensures that plans and related parties can look to an established body of rules and principles to structure relationships").  This is particularly true because the DOL is not merely tasked with crafting supportive regulations to implement certain statutory provisions in this instance.  With respect to the definition of "plan assets," the statute ***assigns*** the Department the task to define "plan assets" under ERISA, and the Department's "reasoning in its rulings regarding 'plan assets' [is] thorough, valid, and particularly consistent." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007).

The 1996 Advisory Opinion is wholly consistent with the Department's view that the assets of a trust are assets of plans that have a beneficial ownership interest in the trusts "under ordinary notions of property rights under non-ERISA law." In general, the assets of an ERISA plan "include any property, tangible or intangible, in which the plan has a beneficial ownership interest." Advisory Opinion 93-14A (Department of Labor May 5, 1993), Exhibit 10; *accord, Faber*, 648 F.3d at 105-06.

In *Carver v. The Bank of New York Mellon,* No. 15-CV-10180, 2017 WL 1208598 (S.D.N.Y. March 31, 2017), the plaintiffs challenged the exchange rate that Bank of New York Mellon ("BNYM") used to calculate dividend or interest payments on foreign securities in which benefit plans invested. The benefit plans owned the foreign securities through American Depository Receipts (ADRs) managed by BNYM. The exchange rate that BNYM used for dividends and interest payments was usually at or near the most advantageous rate for BNYM on the day of the exchange. BNYM argued that the foreign securities were not plan assets, just the ADRs, and BNYM was therefore not a fiduciary with respect to the foreign securities.

 Judge Oetken held that under "ordinary notions of property rights," BNYM was "*title* owner" of the securities, but that the plans that acquired the ADRS "in turn have a beneficial ownership in the underlying Deposited Securities." *Id*. at *6 (emphasis in original). The foreign securities were therefore plan assets. *See also Koresko,* 646 Fed. App. at 237, 240 ("While trustees have legal title and a non-beneficial interest in trust assets, beneficiaries of trusts have an equitable or beneficial interest . . . . [I]f an ERISA plan has a beneficial interest in property, this interest is sufficient to render the property 'plan assets' under ERISA.") (citations omitted).

The Department's Advisory Opinion is also consistent with the decision in *Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014).  There, the plaintiffs sought to assert a claim for BNYM's alleged violation of the Trust Indenture Act for trusts governed by pooling and servicing agreements. The Trust Indenture Act only applies to investments in debt.  Plaintiffs therefore argued that pass-through certificates are really debt, and the defendant argued that pass-through certificates are really equity to which the TIA did not apply, the opposite of this action. The court held that pass-through certificates were equity investments not subject to the Trust Indenture Act. "For one

thing," the court said, "payments to certificateholders remain 'contingent' on the payments on the underlying loans, because there is no meaningful source of cash other than the loans themselves." *Id.* at 167 (citation omitted).

As in *Bank of N.Y. Mellon*, the three pass-through certificates now before the Court are all "non-recourse." Payments to investors are entirely contingent on payments by homeowners of principal and interest or other income from the securitized mortgages. There is no other meaningful source of cash from which investors can be paid.  And investors' return on investment is contingent on mortgage performance.

Accordingly, the plan asset regulation, as interpreted by the legal authorities, demonstrates that the mortgages underlying Plaintiff's Certificates are an equity interest and thus plan assets under ERISA.

> **D.     The Mortgages That Underlie the Notes Are Also Plan Assets
> Under the Look-through Rules**

Notes and pass-through certificates alike are "pooled investment vehicles" and mechanisms for investors to retain mortgage management services. The two forms of mortgage-backed securities are functionally the same. There is "no other meaningful source of cash from which investors can be paid" under either structure. *Bank of N.Y. Mellon*, 775 F.3d at 167. The Department's functional definition of plan assets is intended to prevent evasion of fiduciary responsibility by legal formality.

The Department's intent in promulgating the plan assets regulation, as expressed in the preambles to the proposed rules and the final rule, to define the assets of pooled investment vehicles as plan assets, never changed:

> [A] functional analysis leads to the conclusion that with respect to a wide variety
> of pooled investment vehicles, when a plan invests some or all of its assets in a
> pooled investment vehicle, the plan is, as a practical matter, retaining the

management of that investment vehicle to manage the portion of the plan assets which is so invested. It would be unreasonable to suppose that Congress intended that the protections of the fiduciary responsibility provisions of the Act which are applicable where a plan retains a manager of its investments directly would not be applicable where the manager is retained indirectly, through investment by the plan in a pooled investment vehicle. Therefore, ***it seems to the Department that Congress intended that, where a plan invests in a pooled investment vehicle, the assets of that vehicle are properly viewed as plan assets, and must be managed in accordance with the fiduciary responsibility provisions of the Act***, unless circumstances exist which make application of those provisions inapplicable or unnecessary.

44 Fed. Reg. 50363, 50364 (DOL August 28, 1979) (proposed rule) (emphasis added).

Seven years and many letters of comment and oral presentations at public hearings later, the Department's intent was unchanged. In the Final Rule, the Department stated as follows:

In the Department's view, there are many situations where a plan, although nominally investing in assets in a separate entity, is as a practical matter retaining the persons who manage the entity to provide management investment services for the plan.

. . .

In the Department's view, it would be unreasonable to suppose that Congress intended that the protections of the fiduciary responsibility provisions of the Act which are applicable where a plan directly retains a manager of its investments would not be applicable where the manager is retained indirectly through an investment by the plan in a collective investment fund. It would appear to be inconsistent with the broad functional definition of "fiduciary" in ERISA if persons who provide services that would cause them to be fiduciaries if the services were provided directly to plans would be able to circumvent the fiduciary responsibility rules of the Act by the interposition of a separate legal entity between themselves and the plans (for example, by providing services to a limited partnership in which plans invest). However, neither ERISA itself nor the legislative history of the Act provides a clear indication of the extent to which fiduciary responsibility provisions of the Act are intended to apply when a plan invests in another entity which may be a vehicle for collective investment of plan funds.

51 Fed. Reg. 41262, 41262-63 (DOL November 13, 1986) (final rule).

The Department recognized that without the "regulation it would be relatively easy for an investment manager to avoid compliance with the fiduciary responsibility provisions of ERISA by indirectly providing investment management services to plans through a separate legal entity." *Id.* at 41264.

17

The Department's 1996 Advisory Opinion advised that the assets of mortgage securitizations, pooled investment vehicles, are plan assets on the same overarching reasoning, not on the legal formalities of pass-through certificates:

> The look-through rules are based on the premise that, with certain exceptions not here relevant, when a plan indirectly retains investment management services by investing in a pooled investment vehicle, the assets of the vehicle should be viewed as plan assets and managed in accordance with the fiduciary responsibility provisions of ERISA . . . . The same result would obtain, moreover, even if [the company] structured the mortgage pool without using the vehicle of the trust.

Advisory Opinion 96-23A, Exhibit 9 (footnote omitted).

Most treatises on asset securitization also acknowledge that the Department's plan assets regulation defines assets held in pooled investment vehicles as plan assets:

> The DOL's position regarding the characterization of a security as debt versus equity may be explained in part by the DOL's intent in promulgating the Plan Asset Regulation to require application of the ERISA fiduciary duty and prohibited transaction rules in situations where investment management services are being provided indirectly to Benefit Plans. This arguably would be the case where the plan's investment return is dependent upon or materially affected by the performance of the underlying assets of an entity in which the plan invests (as opposed to being dependent upon the business operations or creditworthiness of the issuer itself, regardless of any performance of the assets it holds).

P. Dolan and C. Davis III, *Securitizations: Legal and Regulatory Issues* § 18.05[2] at 18-13 (2018 ed.), Exhibit 11.

Again, investors in the three pass-through certificates in this action and the pass-through certificates in *Bank of N.Y. Mellon* are paid entirely from payments by homeowners and other funds derived from the securitized mortgages. The same is true of the notes. All of the securities here, pass-through certificates and notes alike, are non-recourse. The issuer of the notes, the supposed debtor, was a shell entity, a legal fiction, without assets or business operations to generate funds to pay investors. *See generally* Statement of Facts ¶¶ 25-33. The governing documents for the three notes provide that the notes are non-recourse and the obligation to

investors can only be paid from revenue derived from the securitized mortgages. *Id.* The governing documents of the three notes expressly forbid the issuer and the indenture trust from conducting any other business. *Id.*

The mortgages that backed the mortgage-backed notes are not collateral for the debt of the issuer of the notes. The mortgages are the only source of payment for investors. The entity that issued the notes and the entity that holds and manages the mortgages are pooled investment vehicles to which the plan asset regulation's look-through rule applies.

### E.  Plaintiffs' Investments Have Substantial Equity Features

Although the foregoing is analysis is dispositive, Plaintiffs briefly note that the notes and certificates in which they invested have "substantial equity features" to the extent the Court believes the plan assets regulation calls for examination of the substantive features of the notes. *See, e.g.,* B. Klippert, *Guide to ERSIA Issues in Mortgage-Backed Securities and Asset Backed Securities,* at 12-13 (Practicing Law Institute 2020), Exhibit 14.[9]

Under the plan assets regulation, the character of an investment as debt or equity is not static; on the contrary, it is dependent on the circumstances at any given time:

> The definition of equity interest in the final regulation in effect provides that characterization of an instrument as debt or equity is made continuously during a plan's holding of the instrument. Thus, for example, if a plan acquires an instrument which is debt at the time of acquisition, but due to changing market conditions the equity interests become significant, the instrument would then be characterized as an "equity interest."

51 Fed. Reg. 41262, 41266.  The DOL expressly rejected comments "advocat[ing] that a determination of the character of an instrument be made at the time of its initial issuance," "that the characterization of an instrument at the time of issuance should control unless a significant

---

[9] As noted above, Plaintiffs intend address this issue in greater depth in their opposition to Defendants briefing, which Plaintiffs believe will focus on this issue.

change is made to the terms of the instrument itself," and "that a determination of whether an instrument creates a debt or equity interest should be made at the time of the plan's investment." *Id.*

The supposed "equity cushion" retained by the issuer was always thin, even if the securitized mortgages had been honestly represented, and is now long gone. The investors in the supposed debt tranches always had entrepreneurial risk, but undeniably so after the crash. The evolving risk to investors is reflected in the ratings history of the notes in which the Plan invested.

The three notes at issue have been downgraded since first issued, and the tranches of notes subordinate to the ones in which the Plan invested have fared worse. The rating for the AHMIT 2004-4 investment was rated Aaa by Moody's when first issued, the highest rating (Exhibit 15, AHMI Trust 2004-4 6-A-1, at 1-2). The note was rated as low as Ba1 by Moody's, which Moody's characterizes as "judged to be speculative and are subject to substantial credit risk." The note was later upgraded, however, and on December 20, 2018, was rated Aaa again. *Id.* The next two tranches of notes subordinate to the Plan are rated Caa1 and Caa2 (Exhibit, 16, AHMI Trust 2004-4 6-A-2 and AHMI Trust 2004-4 7-A). Moody's characterizes Caa as "speculative of poor standing and are subject to very high credit risk." The next tranche of notes below those two in subordination is rated Ca, which Moody's characterizes as "highly speculative and are likely in, or very near, default, with some prospect of recovery of principal and interest." All three of those subordinate tranches were initially rated Aaa by Moody's, the highest rating. The tranches subordinate to those three are not now rated.

The note that the Plan acquired in AHMIT 2005-3 was also initially rated Aaa. (Exhibit 17, UFCW_012109). The note was rated as low as A2 by Moody's, which Moody's

characterizes as "upper-medium grade and subject to low credit risk." The note was later upgraded to Aa2 on December 29, 2017. Id. Moody's withdrew the rating on October 11, 2018, based upon a "small pool factor."  The note is not now rated. Id.

The tranche of AHMIT 2005-3 immediately below the one in which the Plan invested, was also initially rated Aaa. Moody's downgraded the tranche to Ca on January 7, 2011 (Exhibit 18, UFCW_012047), which Moody's characterizes as "highly speculative and are likely in or, or very near, default, with some prospect of recovery of principal and interest. According the Standard & Poor's, the note is in default. Moody's has now withdrawn the ratings for all tranches in the trust.

Moody's rated the Plan's note in the GMAC trust as B2 on April 21, 2010 (Exhibit 19, RFMSII Home Loan Trust 2006-HI1 at 2), which Moody's characterizes as "considered to be speculative and subject to high credit risk." The note was paid off in 2018, almost certainly as the result of accelerated collection of principal from foreclosures, deeds in lieu of foreclose, and short sales. The maturity date for the note was February 25, 2036. The early payment of the principal on the note extinguished the Plan's right to further interest payments. None of the tranches below the one in which the Plan invested are now rated by Moody's.

The ratings of tranches that are senior to the supposed equity tranche retained by the issuer as in default or likely to default is dispositive on the question whether investments characterized as debt are really equity:

> A security in the form of debt may nonetheless be treated as equity if there is insufficient equity subordinate to the debt security. If the total principal amount of the debt and equity equals, or nearly equals, the principal balance of the pool assets, noteholders may not have a reasonable expectation of being repaid at the outset of the transaction.

J. Arnholz, R. Auerbach and E. Gainor, *Offerings of Asset-Backed Securities* § 12.02[B] at 12-33, Exhibit 13.

Although the notes in which the Plan invested are properly recognized as equity interests in the trusts from the outset, after the bubble in home prices burst and foreclosures became rampant, any argument that the notes were not equity disappeared with the value of the homes that secured the mortgages.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment.

Dated: March 6, 2020

Respectfully submitted,

**GUTTMAN, BUSCHNER &
BROOKS PLLC**

By: /s/ Justin S. Brooks_____
    Justin S. Brooks
    Elizabeth H. Shofner
    41-30 46th Street, Apt. 1-O
    Sunnyside, NY 11104
    Tel: 202-800-3001
    Fax: 202-827-0041
    E-mail: jbrooks@gbblegal.com
    E-mail: lshofner@gbblegal.com

    Ruben A. Guttman (*pro hac vice*)
    Traci L. Buschner (*pro hac vice*)
    R. Bradley Miller (*pro hac vice*)
    2000 P. Street, NW, Suite 300
    Washington, D.C. 20036
    Tel: 202-800-3001
    Fax: 202-827-0041
    E-mail: rguttman@gbblegal.com
    E-mail: tbuschner@gbblegal.com
    E-mail: bmiller@gbblegal.com

    **LOWEY DANNENBERG, P.C.**
    Barbara J. Hart
    David C. Harrison
    44 South Broadway, Suite 1100
    White Plains, NY 10601
    Tel: (914) 997-0500

Fax: (914) 997-0035
E-mail: bhart@lowey.com
E-mail: dharrison@lowey.com

**KARMEL LAW FIRM**
Jonathan D. Karmel (*pro hac vice*)
221 N. LaSalle Street, Sutie 1550
Chicago, IL  60601
Tel: 800-459-6264
Fax: 312 641-0781
E-mail: jon@karmellawfirm.com

*Attorneys for Plaintiffs*