# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RONALD E. POWELL, *et al.*, as Trustees and on behalf of The United Food & Commercial Workers Unions & Employers Midwest Pension Fund,

                              Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION, *et al.*,

                              Defendants.

No. 18–cv–1951–VSB–SDA

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Richard A. Jacobsen
Thomas N. Kidera
Aaron M. Rubin
ORRICK, HERRINGTON
& SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000
rjacobsen@orrick.com
tkidera@orrick.com
amrubin@orrick.com

Kenneth Herzinger
ORRICK, HERRINGTON
& SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700
kherzinger@orrick.com

*Attorneys for Ocwen*

Howard F. Sidman
Amanda L. Dollinger
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
hfsidman@jonesday.com
adollinger@jonesday.com

Evan Miller (*pro hac vice*)
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939
emiller@jonesday.com

Benjamin G. Minegar (*pro hac vice*)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
bminegar@jonesday.com

*Attorneys for Wells Fargo*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 4

STANDARD OF REVIEW ....................................................................................... 5

ARGUMENT ............................................................................................................ 5

I.     Plaintiffs Do Not Show That the At-Issue Securities are "N[ot] . . . Publicly-Offered Securit[ies]." .................................................................................. 5

II.    Plaintiffs Do Not Show That the At-Issue Securities are "Equity Interest[s]." ................ 8

    A.    The At-Issue Securities Are Not "Equity Interest[s]." ........................................... 8

    B.    Plaintiffs Rewrite the Definition of "Equity Interest." ......................................... 11

    C.    The At-Issue Securities Do Not Qualify as "Equity Interest[s]" Even Under Plaintiffs' Rewritten Definition. .................................................. 13

III.    Plaintiffs' Assertion of a Concession is Meritless. ........................................... 19

IV.    Plaintiffs' Cited Authorities Are Inapposite. .................................................... 19

CONCLUSION ....................................................................................................... 24

## TABLE OF AUTHORITIES

Page

CASES

*Amaker v. Foley*,
274 F.3d 677 (2d Cir. 2001)..............................................................................5, 7

*Bd. of Trs. of CWA/ITU Negotiated Pension Plan v. Weinstein*,
107 F.3d 139 (2d Cir. 1997)..................................................................................23

*Carver v. Bank of New York Mellon*,
2017 WL 1208598 (S.D.N.Y. Mar. 31, 2017) ................................................20, 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................5

*Centeno v. City of N.Y.*,
2019 WL 1382093 (S.D.N.Y. Mar. 27, 2019) .......................................................7

*Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*,
882 F. Supp. 2d 606 (S.D.N.Y. 2012).....................................................................2

*Henson v. Santander Consumer USA Inc.*,
137 S. Ct. 1718 (2017)..........................................................................................13

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012)...................................................................11

*In re Daley*,
717 F.3d 506 (6th Cir. 2013) ................................................................................23

*In re Halpin*,
566 F.3d 286 (2d Cir. 2009)..................................................................................24

*Kalda v. Sioux Valley Physician Partners, Inc.*,
481 F.3d 639 (8th Cir. 2007) ................................................................................24

*McCoy v. MIT*,
950 F.2d 13 (1st Cir. 1991)...................................................................................23

*Meacham v. Knolls Atomic Power Lab.*,
554 U.S. 84 (2008)..............................................................................................2, 6

*Morris v. Nielsen*,
   374 F. Supp. 3d 239 (E.D.N.Y. 2019) ...................................................................15

*Myeress v. BuzzFeed Inc.*,
   2019 WL 1004184 (S.D.N.Y. Mar. 1, 2019) ...........................................................7

*N.Y. Currency Research Corp. v. CFTC*,
   180 F.3d 83 (2d Cir. 1999)......................................................................................2

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
   2014 WL 241739 (S.D.N.Y. Jan. 22, 2014) ..........................................................11

*Ret. Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*,
   2013 WL 593766 (S.D.N.Y. Feb. 14, 2013)................................................19, 23, 24

*Ret. Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014).................................................................................20

*Secretary of Labor v. Koresko*,
   646 F. App'x 230 (3d Cir. 2016) ..........................................................................20

*Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*,
   38 Misc. 3d 1214(A) (N.Y. Sup. Ct. 2012) ..........................................................18

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3 ......................................................................................... *passim*

Fed. R. Civ. P. 56..........................................................................................5, 22

## INTRODUCTION

Plaintiffs ask this Court to disregard the plain language of the regulation governing "plan assets" under ERISA and to reach a result that DOL[1] never intended.  DOL's "general rule" is that "when a [pension] plan invests in another entity, the plan's assets include its investment, but *do not*, solely by reason of such investment, *include any of the underlying assets of the entity*." 29 C.F.R. § 2510.3-101(a)(1)-(2) (emphases added).  Nonetheless, Plaintiffs claim that because the pension Fund for which they are trustees purchased certain fixed-income securities issued by six RMBS Trusts, not only the investments (the fixed-income securities) but also the Trusts' underlying assets (the mortgages) became "plan assets."  Plaintiffs' deficient attempts to support this claim conflict with the regulation, the case law, and the facts.

Despite Plaintiffs' attempts at obfuscation, the regulation at issue here is straightforward. It is undisputed that Plaintiffs' ERISA claims may proceed only if the mortgages are "plan assets."  ECF 150 at 21.  And the regulation states that "underlying assets" (like the mortgages) are generally *not* "the plan's assets."  29 C.F.R. § 2510.3-101(a)(2).  "However," under the look-through exception to this general rule, "in the case of a plan's investment in an *equity interest* of an entity that is *n[ot] a publicly-offered security* . . . its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity."  *Id.* at § 2510.3-101(a)(2) (emphases added).  "The term equity interest means any interest in an entity other than an

---

[1] Unless otherwise specified, capitalized terms are defined as set forth in the Memorandum of Law in Support of the Joint Motion for Summary Judgment of Defendants Ocwen and Wells Fargo.  This brief refers to that Memorandum, ECF 222, as "WF/Ocwen Br."; to Local Civil Rule 56.1 Statement of Material Facts of Defendants Ocwen and Wells Fargo, ECF 223, as "WF/Ocwen SOMF"; to Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, ECF 225, as "Fund Br."; to Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss, ECF 117, as "Fund Motion," and to Defendants' Local Civil Rule 56.1 Statement of Additional Material Facts of Defendants Ocwen and Wells Fargo in Support of Their Opposition to Plaintiffs' Motion for Partial Summary Judgment (located at the end of Defendants' Ocwen and Wells Fargo's Response to Plaintiffs' Separate Statement of Undisputed Facts In Support of Motion For Partial Summary Judgment) as "WF/Ocwen Add. SOMF."

instrument that is treated as indebtedness under applicable local law and which has no substantial equity features." *Id.* at § 2510.3-101(b)(1). And the term "publicly-offered security" means a security that is (i) "freely transferable," (ii) "part of a class of securities that is widely held," and (iii) sold to the public under a registration statement and timely registered. *Id.* at § 2510.3-101(b)(2). Plaintiffs, as the parties attempting to secure the application of the look-through exception, bear the burden to show that these elements apply. *See Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008); 50 Fed. Reg. at 964. But they do not carry that burden in their briefing—and they cannot carry that burden at all.

So instead, Plaintiffs do their best to muddle the regulatory requirements. Plaintiffs claim repeatedly, and without authority, that DOL "defined plan assets expansively," Fund Br. 2, 7, although this baseless assertion runs afoul of the express textual presumption (which Plaintiffs ignore entirely in their brief) that plan investments *do not* reach an entity's underlying assets. *See* 29 C.F.R. § 2510.3-101(a)(2). And Plaintiffs disregard *both* the "n[ot] a publicly-offered security" requirement and the definition of an "equity interest."

But the regulatory text controls. "Construing a regulation is similar to interpreting a statute." *N.Y. Currency Research Corp. v. CFTC*, 180 F.3d 83, 92 (2d Cir. 1999). So courts must "begin by examining [the regulation's] language" to "ascertain [its] plain meaning." *Id*. And when that language is "plain and unambiguous," courts are "not at liberty to override" it. *Danecker v. Bd. of Trs. of Serv. Emps. 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 611 (S.D.N.Y. 2012). Here, under the plain regulatory language, Plaintiffs' motion for partial summary judgment should be denied for two independent reasons.

First, Plaintiffs' motion fails unless Plaintiffs have established, as a matter of law, that the At-Issue Securities are "n[ot] . . . publicly-offered securit[ies]." 29 C.F.R. § 2510.3-101(a)(2).

This is an unambiguous requirement of the look-through exception.  *See id.*  Indeed, Plaintiffs quote the "n[ot] a publicly-offered security" requirement in the introduction to their brief.  *See* Fund Br. 2.  But then, inexplicably, Plaintiffs disregard the requirement entirely.  They never argue that it is satisfied or that for some reason it should not apply—instead, they simply ignore it.  And they cannot satisfy it now (by addressing it for the first time on reply or otherwise).  The Court need go no further:  It should deny the motion on this ground alone.

Second, Plaintiffs' motion fails for the separate reason that Plaintiffs have not established, as a matter of law, that the At-Issue Securities are "equity interest[s]."  *Id.*  The regulation defines an "equity interest" as an "interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features."  *Id.* at § 2510.3-101(b)(1).  But all of the At-Issue Securities are treated as debt under local law, and none has *any* equity features.  Perhaps for this reason, Plaintiffs do not even attempt to show that the At-Issue Securities satisfy this standard as a matter of law.

Instead, Plaintiffs ask this Court to disregard the plain language of the definition and hold that a list of examples—"[a] profits interest in a partnership, an undivided ownership interest in property and a beneficial interest in a trust," *id.*—are actually separate, freestanding categories of interests that qualify as "equity interest[s]" regardless of whether they fall within the definition of the term.  But this argument also fails.  DOL knew how to draft a definition to include a primary category as well as several separate categories, *see, e.g., id.* at § 2510.3-101(c)(1), and it did not do so here.  And in any event, Plaintiffs do not show (as a matter of law or even as a matter of disputed fact) that any of the At-Issue Securities is "[a] profits interest in a partnership, an undivided ownership interest in [the mortgages or] a beneficial interest in a trust" holding the mortgages.  *Id.* at § 2510.3-101(b)(1).  So Plaintiffs' textual contortions achieve nothing.

Plaintiffs' failure to show that the mortgages are plan assets is unsurprising.  None of Plaintiffs' supposed authorities—three cases and a DOL opinion—even purports to discuss the kinds of fixed-income securities involved in this case, and most of those authorities *expressly decline* to address the circumstances at issue here.  Plaintiffs entirely avoid discussion of the difference between notes (at issue here) and certificates (not at issue here) in trusts governed by indentures.  They ignore the difference between regular-interest certificates (at issue here) and residual certificates (not at issue here) in REMIC trusts.  And they disregard that their theory would impose liability on "inadvertent ERISA fiduciaries"—although this result is contrary to DOL's intent.  51 Fed. Reg. at 41,267.

Plaintiffs' claims are unprecedented.  The holding they seek is contrary to the plain text of the governing DOL regulation.  For the reasons described in greater detail below, Plaintiffs' motion for partial summary judgment should be denied.

## BACKGROUND

Ocwen and Wells Fargo incorporate by reference the Background section of the Memorandum of Law in Support of the Joint Motion for Summary Judgment of Defendants Ocwen and Wells Fargo.  *See* WF/Ocwen Br. 4-17.

This Court has explained that "Plaintiffs may only proceed on their ERISA claims if two conditions are satisfied:  first, the mortgages underlying the . . . Trusts must qualify under ERISA as 'plan assets' of the [Fund]; and second, Ocwen, as the servicer of those 'plan assets,' must qualify under ERISA as a 'fiduciary' of the [Fund]."  ECF 150 at 21.  Wells Fargo and Ocwen have moved for summary judgment on both issues.  *See* WF/Ocwen Br. 1-40.  Plaintiffs, by contrast, have not addressed the second issue in their summary judgment brief.  They have moved for summary judgment on one issue only: whether the mortgages underlying the Trusts are plan assets for the purposes of ERISA.  *See* Fund Br. 1 & n.2.

## STANDARD OF REVIEW

Plaintiffs' motion for partial summary judgment should be denied unless they can show they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs "bear[] the initial responsibility" to demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If they fail to carry that initial burden, summary judgment must be denied. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

## ARGUMENT

Plaintiffs fail to demonstrate that they are entitled to summary judgment on the only question that their motion presents: whether the mortgages underlying the Trusts are the Fund's "plan assets" under ERISA. Fund Br. 1 & n.2. The "general rule" is that "when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity." 29 C.F.R. § 2510.3-101(a)(1)-(2). That "general rule" is subject to a narrow exception, which applies (as relevant here) "in the case of a plan's investment in an *equity interest* of an entity that is *n[ot] a publicly-offered security*." *Id.* § 101(a)(2) (emphases added). Plaintiffs argue that the exception applies as a matter of law. But Plaintiffs do not even *attempt* to establish that the At-Issue Securities are "n[ot] . . . publicly-offered securit[ies]." *Id.* And they fail to establish that the At-Issue Securities are "equity interest[s]." *Id.* For each of these two independent reasons, Plaintiffs' motion should be denied.

## I.     PLAINTIFFS DO NOT SHOW THAT THE AT-ISSUE SECURITIES ARE "N[OT] . . . PUBLICLY-OFFERED SECURIT[IES]."

The look-through exception applies only where a pension fund's investment interest is "n[ot] a publicly-offered security." *Id.* DOL has explained that the "application of [ERISA's] fiduciary responsibility provisions" to publicly-offered securities would make it "virtually impossible for the company's management to know whether plans hold [those securities] at any

particular time."  44 Fed. Reg. at 50,365.  The "n[ot] a publicly-offered security" requirement

was intended "to prevent the regulation from operating to create inadvertent ERISA fiduciaries."

51 Fed. Reg. at 41,267.  Where an entity's publicly-offered securities are involved, DOL

"concluded that it would be inappropriate to impose fiduciary responsibility on the entity's

managers . . . merely because plans happen to invest in the entity."  *Id.*

      Plaintiffs have the burden to prove the "n[ot] a publicly-offered security" element of the

look-through exception to the regulation's "general rule."  29 C.F.R. § 2510.3-101(a)(1)-(2).

This comports with the "familiar principle" that the party who invokes an exception has the

burden to prove the exception applies.  *Meacham*, 554 U.S. at 91; *see also* Fund Motion 41

(recognizing that this principle applies to the "n[ot] a publicly-offered security" requirement).

Further, this placement of the burden is consistent with DOL's express intent.  DOL stated in the

preamble to its proposal of the regulation that "the person asserting fiduciary status would have

the burden of showing that a particular investment is an 'equity interest' and that it is not

'publicly-offered.'"  50 Fed. Reg. at 964.  And in promulgating the final rule, DOL confirmed

that it had "endeavored to draft the final regulation in such a way that, in practice, the burden of

proof with respect to matters regarding application of the regulation will be assigned in the

manner described in the preamble to the proposal."  51 Fed. Reg. at 41,279.  Plaintiffs therefore

have the burden to prove that the exception applies here.

      But despite the unambiguous requirement that Plaintiffs demonstrate that the At-Issue

Securities were "n[ot] . . . publicly-offered securit[ies]," 29 C.F.R. § 2510.3-101(a)(2), Plaintiffs

entirely fail to address that element of the look-through exception.  Although Plaintiffs set forth

the requirement in the introduction to their brief, *see* Fund Br. 2, they *never attempt to satisfy it*.

— 6 —

This alone is reason to deny Plaintiffs' motion.  *See Amaker*, 274 F.3d at 681 ("[S]ummary judgment only is 'appropriate' when the moving party has met its burden of production.").

Any attempt to satisfy the "n[ot] . . . publicly-offered" requirement in reply would be futile, as Plaintiffs have forfeited the argument by failing to raise it and marshal evidence in its support in their opening brief and required Statement of Material Facts.  *See* Local Rule 56.1.  As this Court has repeatedly held, "arguments raised for the first time in a reply memorandum are waived and need not be considered."  *Centeno v. City of N.Y.*, 2019 WL 1382093, at *5 n.13 (S.D.N.Y. Mar. 27, 2019) (Broderick, J.); *see also, e.g.*, *Myeress v. BuzzFeed Inc.*, 2019 WL 1004184, at *3 n.4 (S.D.N.Y. Mar. 1, 2019) (Broderick, J.) ("[The litigant] did not make this argument in its opening brief, and I do not consider it here.").

And in any event, Plaintiffs cannot establish that the At-Issue Securities were "n[ot] . . . publicly[ ]offered."  To do so, Plaintiffs must adduce evidence sufficient to show, as a matter of law, that the At-Issue Securities (i) are not "freely transferable," (ii) are not "part of a class of securities that is widely held," or (iii) were not sold to the public under a registration statement and timely registered.  29 C.F.R § 2510.3-101(b)(2)-(4).  But Plaintiffs have adduced *zero* evidence, showing *any* of these characteristics, for *any* of the At-Issue Securities.  Instead, the only relevant evidence demonstrates that the At-Issue Securities *were* publicly offered.  The evidence shows that (i) NIS, the investment manager that acquired all of the At-Issue Securities on the Fund's behalf, considered each of the At-Issue securities "to be freely tradeable"; (ii) the At-Issue Securities were sold as part of public offerings under prospectus supplements to registration statements registered under the Securities Act of 1933; and (iii) the At-Issue Securities were issued in connection with RMBS transactions, which are generally offered to, and purchased by, many investors.  WF/Ocwen SOMF ¶¶ 13-16, 19-24, 140, 209, 229.

Plaintiffs' failure to adduce any evidence—let alone *uncontradicted* evidence—that the At-Issue Securities were "n[ot] . . . publicly[ ]offered" is dispositive.  Plaintiffs cannot establish that the look-through exception to DOL's general rule applies.  Plaintiffs thus cannot establish that the mortgages are "plan assets."  Their motion should be denied on this ground alone.

## II.   PLAINTIFFS DO NOT SHOW THAT THE AT-ISSUE SECURITIES ARE "EQUITY INTEREST[S]."

Plaintiffs' motion separately fails because Plaintiffs have not established that the At-Issue Securities are "equity interest[s]" as a matter of law.  29 C.F.R. § 2510.3-101(a)(2).  Under the regulation, "[t]he term equity interest means any interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features."  *Id.* § 2510.3-101(b)(1).  Plaintiffs do not even attempt to demonstrate that this definition is satisfied as a matter of law.  And their argument that the At-Issue Securities are "equity interest[s]" regardless of the definition conflicts with the regulatory text and the facts.

### A.   The At-Issue Securities Are Not "Equity Interest[s]."

Plaintiffs do not contend that, as a matter of law, any of the At-Issue Securities is an "interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features."  *Id.*; *see* Fund Br. 4 n.5 ("Plaintiffs briefly discuss certain substantial equity features of the Plan's investments . . . but do not provide significant detail because Plaintiffs do not need to satisfy this independent basis to establish the investments are plan assets under the Look Through Rule.").  Plaintiffs include only a "brief[] note" contending that there is some basis for a factual finding that the At-Issue Securities have "substantial equity features."  *See* Fund Br. 19-22.  But the few facts identified by Plaintiffs are insufficient to raise a genuine issue of material fact regarding whether "substantial equity features" exist—let alone to establish "substantial equity features" as a matter of law.

Plaintiffs' argument on this point is cursory.  Plaintiffs do not point to any characteristic described in the case law as an equity feature.  They do not show that any potential equity feature is "substantial."  They vaguely mention a "supposed 'equity cushion,'" Fund Br. 20, but provide neither explanation nor factual support.  They do not mention any other purported equity features, not even those described in the treatise they cite.  *See* Fund Br. 19.

Instead, Plaintiffs' argument consists almost entirely of a short discussion of the ratings of some of the At-Issue Securities, focusing on post-issuance ratings downgrades.  But Plaintiffs cite *no authority* for the proposition that ratings downgrades constitute "substantial equity features."[2]  And, contrary to Plaintiffs' contention, a ratings downgrade (or even a change in credit risk) does not transform debt into equity.  *See* Klippert, *Should the Recent Credit Market Events Affect the Debt-vs.-Equity Characterization of MBS, ABS, CLO, and CDO Notes and, as a Consequence, Their ERISA Eligibility?*, 14 J. STRUCTURED FIN., No. 2, 5-6 (Summer 2008), *available at* https://tinyurl.com/ybsvzzsn (last visited April 17, 2020).  Indeed, even Plaintiffs' own cited authorities cut against their position.  Plaintiffs attach two ERISA treatises stating that the prevailing view is that increased repayment risk *does not* transform debt into equity.  The treatises explain: "[M]ost ERISA practitioners believe that the security should retain its status as debt, because the fact that a creditor may not be repaid its entire principal if an obligor defaults on its obligations, despite all original expectations to the contrary, is an inherent risk of all debt obligations."  ECF 228-17 at 42; *see also* ECF 228-11 at 13.

---

[2] Supposedly in support of their credit-ratings argument, Plaintiffs quote a treatise:  "If the total principal amount of the debt and equity equals, or nearly equals, the principal balance of the pool assets, noteholders may not have a reasonable expectation of being repaid at the outset of the transaction."  Fund. Br. 21 (quoting J. Arnholz et al., *Offerings of Asset-Backed Securities*, § 12.02[B] at 12-33).  But the quotation says nothing about credit ratings, instead addressing collateralization (regarding which Plaintiffs have put forth no evidence whatsoever).  Further, the quotation says nothing about changes over time, instead addressing "the outset of the transaction" (which, again, Plaintiffs do not address).  Finally, the quotation says only that noteholders "may" lack a reasonable expectation of repayment.  The quotation does not support Plaintiffs' argument.

In any event, the facts recited by Plaintiffs do not help them.  *First*, Plaintiffs set forth no facts whatsoever addressing any of the At-Issue Regular-Interest Certificates in the three REMIC Trusts.  *See* Fund Br. 19-22.  *Second*, regarding the At-Issue Offered Notes in Trust AHM 2005-3, Plaintiffs demonstrate only that they were always rated as investment grade.  *See* Fund Br. 20-21; WF/Ocwen SOMF ¶¶ 276, 283; WF/Ocwen Add. SOMF ¶ 9.  *Third*, regarding the At-Issue Offered Notes in Trust HLT 2006-HI1, Plaintiffs show that Moody's temporarily rated them below investment grade, *see* Fund Br. 21, but Plaintiffs ignore that S&P *always* rated the At-Issue Offered Notes as investment grade, WF/Ocwen SOMF ¶¶ 276, 286; WF/Ocwen Add. SOMF ¶ 9.  Furthermore, Plaintiffs concede that these notes were repaid in full, Fund Br. 21, and it is undisputed there were no investment losses on these notes, WF/Ocwen SOMF ¶ 288.  These facts undercut—rather than support—any argument based on the risk of not being repaid. *Finally*, regarding the At-Issue Offered Notes in Trust AHM 2004-4, Plaintiffs argue that according to Moody's they temporarily dipped just below investment grade before rising again, Fund Br. 20—but Plaintiffs omit that S&P always rated the At-Issue Offered Notes as investment grade, WF/Ocwen SOMF ¶¶ 276, 282; WF/Ocwen Add. SOMF ¶ 9.  Even assuming (erroneously) that a ratings downgrade could potentially constitute an equity feature, Plaintiffs' weak assertions regarding temporary, shallow downgrades that are disputed between the ratings agencies could not possibly support a finding of a "*substantial* equity feature[]" that transforms debt into an "equity interest."  29 C.F.R. § 2510.3-101(b)(1) (emphasis added).  That is especially true in the context of the At-Issue Securities' clear, undisputable characteristics of debt.  *See* WF/Ocwen Br. 19-27.

Further, Plaintiffs have no evidence that anyone ever thought the ratings somehow indicated the At-Issue Securities were equity.  NIS—the experienced pension fund manager that

serves as Core-Plus Fixed Income Manager for the Fund and purchased the At-Issue Securities—
"considered [all these securities] to be debt instruments during the entirety of the period that it
has held and managed such investments," and in its representative's "professional judgment, no
circumstances occurred in which [these] securities . . . lost their status as debt instruments and
became equity interests."  ECF 239-93 ¶¶ 11-12.  Indeed, Plaintiffs' own evidence confirms that
"NIS has not and is not holding equity securities on behalf of the [Fund] as NIS understands the
term" and "no circumstances occurred in which the [At-Issue Securities] lost their status as debt
instruments and became equity."  ECF 228-1 ¶¶ 11-12.

Perhaps realizing that the facts regarding the At-Issue Securities do not support their
argument, Plaintiffs interject the ratings of other, subordinate tranches.  *See* Fund Br. 20-21.  But
those tranches are *not at issue*, since the Fund did not invest in them.  WF/Ocwen SOMF at 2-8,
10, 11.  And Plaintiffs offer no argument or authority regarding why their ratings would control
the analysis.  "[S]ubordinate tranches . . . exist to absorb losses."  *In re Bear Stearns Mortg.
Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 766-67 (S.D.N.Y. 2012); *Nat'l Credit
Union Admin. Bd. v. Morgan Stanley & Co.*, 2014 WL 241739, at *14 (S.D.N.Y. Jan. 22, 2014)
(same).  They worked here exactly as designed, reducing risk for the At-Issue Securities.  Any
changes to their ratings did not somehow transform the entirely separate At-Issue Securities into
equity.

### B.    Plaintiffs Rewrite the Definition of "Equity Interest."

At a loss as to how to shoehorn the facts into the regulation's definition of an "equity
interest," Plaintiffs instead focus on evading that definition.  Plaintiffs claim that there are two
"alternative" ways to prove that an At-Issue Security is an "equity interest": by establishing that
the Fund holds *either* (i) an "interest in an entity other than an instrument that is treated as
indebtedness under applicable local law and which has no substantial equity features" *or* (ii) "[a]

profits interest in a partnership, an undivided ownership interest in property [or] a beneficial interest in a trust." Fund Br. 2-4, 7. But Plaintiffs rewrite the regulation's plain language.

The regulation begins with a general definition of "equity interest": "The term equity interest means any interest in an entity *other than* an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features." 29 C.F.R. § 2510.3-101(b)(1) (emphasis added). The phrase "other than" makes clear that instruments that are treated as debt under local law and lack substantial equity features cannot be "equity interests" under any circumstance—the rule is categorical. The next sentence then sets forth three examples that illustrate the general definition: "[a] profits interest in a partnership, an undivided ownership interest in property [or] a beneficial interest in a trust." *Id.*

The three examples do not, as Plaintiffs claim, create "independent bas[e]s" to satisfy the "equity interest" requirement. Fund Br. 4 n.5. A comparison of the definition of "equity interest" with the definition of "operating company" makes this clear. The two definitions are located in immediately adjacent subsections of the plan-assets regulation, and they were proposed and promulgated at the same time. *See* 51 Fed. Reg. at 41,270-71, 41,281. They state:

| Definition | Definition |
|---|---|
| The term equity interest means any interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features.<br>29 C.F.R. § 2510.3-101(b)(1). | An "operating company" is an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital.<br>29 C.F.R. § 2510.3-101(c)(1). |
| **Examples** | **Qualifying Independent Categories** |
| A profits interest in a partnership, an undivided ownership interest in property and a beneficial interest in a trust are equity interests.<br>29 C.F.R. § 2510.3-101(b)(1). | *The term "operating company" includes an entity which is not described in the preceding sentence*, but which is a "venture capital operating company" described in paragraph (d) or a "real estate operating company" described in paragraph (e).<br>29 C.F.R. § 2510.3-101(c)(1) (emphasis added). |

Where DOL intended to set forth in one sentence a term's definition and then set forth in a second sentence other independent categories that also qualify for the label, "it left little doubt in the matter." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017).  DOL did so by providing in the first sentence a definition of a term, followed by a second sentence listing categories within the meaning of the term that, according to the regulation itself, are "not described in the preceding sentence."  29 C.F.R. § 2510.3-101(c)(1).  Indeed, DOL did so "[i]n the very definitional section where we now find ourselves working."  *Henson*, 137 S.Ct. at 1723.  "[W]e presume differences in language like this convey differences in meaning."  *Id.*  Here, the difference supports the plain-language reading that "[a] profits interest in a partnership, an undivided ownership interest in property and a beneficial interest in a trust" are only illustrative examples of (and not departures from) the preceding definition of "equity interest."

Accordingly, under the regulation, the analysis always turns on whether the interest at hand is "an[] interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features."  29 C.F.R. § 2510.3-101(b)(1).  And Plaintiffs do not even attempt to argue that the At-Issue Securities satisfy that regulatory definition as a matter of law.  The proper interpretation of the definition of "equity interest" is therefore dispositive of Plaintiffs' motion.

### C.   The At-Issue Securities Do Not Qualify as "Equity Interest[s]" Even Under Plaintiffs' Rewritten Definition.

In any event, Plaintiffs' redrafting of the regulation is to no avail.  The At-Issue Securities are neither "undivided ownership interest[s] in" the mortgages nor "beneficial interest[s] in [the T]rust[s]."  *Id.*  (Even Plaintiffs do not claim the At-Issue Securities are "profits interests" in "partnerships."  *Id.*)  Plaintiffs' argument fails with respect to both the At-Issue Offered Notes

(issued by the Indenture Trusts) and the At-Issue Regular-Interest Certificates (issued by the REMIC Trusts).

> ### 1. The At-Issue Offered Notes Are Neither "Undivided Ownership Interest[s] in [the Mortgages]" Nor "Beneficial Interest[s] in [the Indenture] Trusts."

Plaintiffs point to not a single provision in the governing agreements in support of the proposition that the At-Issue Offered Notes are either "undivided ownership interest[s] in" the mortgages or "beneficial interest[s] in" the Indenture Trusts. *See* Fund Br. 16-19. And Plaintiffs identify not a single characteristic of the At-Issue Offered Notes that supports their argument. *See id.* These omissions are no coincidence. The contracts and the facts conclusively show that the At-Issue Offered Notes are not ownership or beneficial interests, but rather indebtedness.

The governing agreements for all three Indenture Trusts distinguish between Offered Notes and Trust Certificates—and make clear that the former constitute debt. The agreements identify the holders of Offered Notes as "creditors of the Trust." WF/Ocwen SOMF ¶¶ 148, 160, 170. They state (in identical or materially identical terms) that, "for federal and state income and state and local franchise tax purposes," the Offered Notes "*shall be debt*, and the provisions of this Agreement shall be interpreted to further this intention." *Id.* ¶¶ 146, 158, 168 (emphasis added). And with respect to Trusts AHM 2005-3 and AHM 2004-4, the Indentures and accompanying Forms of Notes expressly state that "[b]y acquiring an [Offered] Note," the holder will be "deemed to represent" that it "believes that the [Offered] Notes are properly treated as *indebtedness without substantial equity features for purposes of*" DOL's plan-assets regulation and "agrees to so treat the Notes." *Id.* ¶¶ 142, 154 (emphasis added). Nowhere do the governing agreements state that the Offered Notes constitute ownership or beneficial interests. WF/Ocwen Add. SOMF ¶ 1.

Further, the At-Issue Offered Notes bear all the traditionally recognized features of debt, including (i) issuance under indentures, (ii) payment of principal and interest at fixed dates and for a stated rate of interest, (iii) the absence of any conversion rights and warrants, (iv) seniority to numerous other security classes, and (v) credit enhancements (such as excess interest and overcollateralization).  WF/Ocwen Br. 4-6, 22-24.  And the Fund and NIS have consistently treated the At-Issue Offered Notes as debt in public filings and internal analysis.  *See id.* at 24-25; WF/Ocwen SOMF ¶¶ 187-96, 200-03.  Indeed, NIS was permitted to invest in and manage *only* debt securities for the Fund and admitted it would have been improper to invest in equity securities, as Plaintiffs now claim that it did.  WF/Ocwen Br. 25.  Moreover, for all three Indenture Trusts, law firms issued tax opinions stating that the At-Issue Offered Notes will be "classified as debt instruments" or "characterized as indebtedness."  WF/Ocwen SOMF ¶¶  151, 163, 173.

Plaintiffs do not dispute any of this.  And they have no evidence whatsoever demonstrating that the At-Issue Offered Notes are ownership or beneficial interests (rather than debt).  Instead, Plaintiffs ignore the regulatory text entirely and suggest that the look-through exception applies whenever an ERISA plan acquires any securities issued by a "pooled investment vehicle."  Fund Br. 16-19.  For support, they rely on broad statements in DOL's proposed rule preamble that, when read out of context (as Plaintiffs read the statements), conflict with the actual language of the regulation.  *Id.*

This argument is baseless.  The term "pooled investment vehicle" appears nowhere in the plan-assets regulation, *see* 29 C.F.R. § 2510.3-101, and a preamble cannot be used to contradict the regulation as actually promulgated, *Morris v. Nielsen*, 374 F. Supp. 3d 239, 254 (E.D.N.Y. 2019).  In any event, other portions of the proposed and final rule preambles make unequivocally

clear that DOL intended the actual text of the look-through exception to govern.  *See, e.g.*, 44

Fed. Reg. 50,365-66 ("[E]ven where a plan holds an interest in a . . . pooled investment

vehicle . . . there are cases . . . where the assets of the pooled investment vehicle should not be

viewed as constituting plan assets."); *id.* at 50,365 (discussing the "n[ot] a publicly-offered

security" requirement); 51 Fed. Reg. 41,265-66 (discussing the "equity interest" requirement).[3]

The regulatory history conflicts with Plaintiffs' argument—just as the regulatory text, the

contractual language, and the facts flatly contradict Plaintiffs' position regarding the At-Issue

Offered Notes.

> **2.     The At-Issue Regular-Interest Certificates Are Neither "Undivided Ownership Interest[s] in [the Mortgages]" Nor "Beneficial Interest[s] in [the REMIC] Trusts."**

Plaintiffs' argument regarding the At-Issue Regular-Interest Certificates is no more

convincing.  The REMIC Trusts issued two types of certificates: Regular and Residual.

WF/Ocwen SOMF ¶ 25.  The governing agreements characterize the *Residual Certificates* as

representing the ownership or beneficial ownership of the "residual interest" in the REMICs.  *Id.*

¶¶ 176, 183; WF/Ocwen Add. SOMF ¶ 5.  And the Trusts' disclosure documents state (in

identical or materially identical terms) that the *Regular Certificates* "will generally be treated as

representing ownership of debt for federal income tax purposes." WF/Ocwen SOMF ¶¶ 178, 182

---

[3] Plaintiffs also quote—but never address or apply—a mention in DOL's final rule preamble of the phrase "collective investment fund."  *See* Fund Br. 17.  This quotation does not bolster Plaintiffs' argument regarding the proposed rule preamble's discussion of "pooled investment vehicle[s]." First, like the phrase "pooled investment vehicle," the phrase "collective investment fund" appears nowhere in the plan-assets rule.  *See* 29 C.F.R. § 2510.3-101.  Second, DOL did not suggest that it intended the phrase to displace the actual text of the regulation and the requirements of the look-through exception.  *See* 51 Fed. Reg. 41,265-66 (discussing the "equity interest" requirement); *id.* 41,267 (discussing "publicly-offered security" requirement).  Finally, there is no indication that DOL believed a "collective investment fund" and a "pooled investment vehicle" to be identical.  Instead, DOL described collective investment funds by explaining that "some institutional managers—such as banks and insurance companies—have traditionally pooled the assets of several plans for purposes of collective investment, and plans typically participate in such a fund by acquiring investment units evidencing an interest in the fund." *Id.* 41,263.  This does not describe an RMBS Trust.  Plaintiffs' reliance on the preamble language does not help them.

186.  Further, not only federal but also New York tax law (*i.e.*, "local law" under the regulation) treat residual certificates as equity and regular certificates as debt.  WF/Ocwen Br. at 21-22.

The At-Issue Regular-Interest Certificates also bear all the traditionally recognized features of debt, including: (i) issuance under PSAs that are structurally similar to indentures; (ii) payment of principal and interest at fixed dates and for a stated rate of interest; (iii) the absence of any conversion rights and warrants; (iv) seniority to numerous other security classes, and (v) credit enhancements (such as excess interest and overcollateralization).  WF/Ocwen Br. 4-6, 22-24.  And both the Fund and NIS have treated the At-Issue Regular-Interest Certificates as debt, in both public filings (signed by multiple Plaintiff trustees) and internal analysis.  *Id.* 24-25. Indeed, NIS testified that in its professional judgment (as a sophisticated investment manager), all the RMBS it acquired and continues to manage for the Fund have been and remain debt securities, not equity.  WF/Ocwen SOMF ¶¶ 216, 218, 227.

Plaintiffs' contrary arguments do not show that the At-Issue Regular-Interest Certificates are "undivided ownership interest[s] in" the mortgages or "beneficial interest[s] in" the REMIC Trusts.  Plaintiffs cobble together a number of snippets of language from the REMIC Trusts' prospectuses, prospectus supplements, and governing agreements.  But these quotes are to no avail.

Only two of Plaintiffs' snippets actually address ERISA.  The first, in the prospectus for Trust CSFB 2003-27, simply states that ERISA restrictions might apply "[u]nless an exception from the 'plan asset' treatment is available under the Plan Assets Regulation or elsewhere in ERISA."  WF/Ocwen Add. SOMF ¶ 3.  The quotation does not resolve, but rather *presents* the question whether the plan-asset regulation treats the mortgages as plan assets.  The second quotation, in the prospectus for Trust MASTR 2003-5, sets forth the possible consequences "*[i]f*

the residential loans, agency securities, mortgage securities and other assets included in a trust fund constitute plan assets." *Id.* at ¶ 6. (emphasis added). This quotation, too, raises the issue of ERISA classification without resolving it.

The quotations that do not address ERISA are no more persuasive. Most of Plaintiffs' collection of fragments are drawn from prospectuses and prospectus supplements. Fund Br. 8-12. But a prospectus or prospectus supplement is "not a contract" and does not control. *Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*, 38 Misc. 3d 1214(A) (N.Y. Sup. Ct. 2012). Several of the collected quotations state that the certificates, *in the aggregate*, evidence the entire beneficial ownership of the trust. Fund Br. 11. But such a statement indicates that no one *other* than the certificateholders owns a beneficial interest in the trust; it does not demonstrate anything about the character or ownership interest of any *particular* certificate. Still other collected quotations state that the trustees hold the trust assets "for . . . the benefit" of the certificateholders. Fund Br. 9. But these fragments show only that the trustee does not hold the certificates for its own benefit; they do not show anything about whether any particular certificateholder holds an equity interest in the mortgages.

In any event, Plaintiffs' analysis is fundamentally flawed. Plaintiffs' collection of quotations supposedly establishes that the At-Issue Regular-Interest Certificates are "equity," no matter the features or legal treatment of the securities. But Plaintiffs themselves have acknowledged that this is not the proper analysis—and that the regulation sets forth a "functional definition of plan assets" that overrides a document's "legal formality." Fund Br. 16. Here, a "functional" analysis demonstrates that the At-Issue Regular-Interest Certificates are *debt*. As described above, both federal *and* state tax law treat the At-Issue Regular-Interest Certificates as debt. The At-Issue Regular-Interest Certificates bear all of the characteristics of debt. And

Plaintiffs and NIS treated the At-Issue Regular-Interest Certificates as debt.  Thus, regardless of labels, the At-Issue Regular-Interests Certificates are actually debt and do not qualify as "undivided ownership interest[s] in [the mortgages or] beneficial interest[s] in [the REMIC T]rusts" for the purposes of ERISA.  *Id.* at § 2510.3-101(b)(1).  This is consistent with how other courts have characterized similar securities. *See Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 2013 WL 593766, at *3 (S.D.N.Y. Feb. 14, 2013) ("[M]any courts have characterized mortgage-backed securities similar to the New York certificates as 'debt.'").

### III.   PLAINTIFFS' ASSERTION OF A CONCESSION IS MERITLESS.

Bereft of any argument based on the actual characteristics or legal treatment of the At-Issue Securities, Plaintiffs rely on a fictional concession to support their position.  Plaintiffs claim that Wells Fargo and Ocwen "conceded" in their motion-to-dismiss briefing that regular-interest certificates in REMIC trusts are equity interests that hold title to the mortgages.  Fund Br. 12.  This assertion is wholly without merit.

In their motion to dismiss briefing, Ocwen and Wells Fargo argued that the At-Issue Offered Notes issued by Trust AHM 2004-4 and Trust 2005-3—the only securities addressed in the then-operative pleading—were debt.  *See generally* ECF 91, 106.  Ocwen and Wells Fargo compared the Offered Notes and the Trust Certificates issued by those Trusts.  *Id.*  Ocwen and Wells Fargo did not address REMIC Trusts, which were not (at that stage) a part of the case.  Nothing in the briefing even remotely suggests a "conce[ssion]," Fund Br. 12, of any kind.  Plaintiffs are simply mistaken.

### IV.   PLAINTIFFS' CITED AUTHORITIES ARE INAPPOSITE.

Finally, Plaintiffs claim that a few inapposite authorities prove their point.  But Plaintiffs mischaracterize the materials on which they rely.  None applies here.

Plaintiffs first cite *Secretary of Laxbor v. Koresko*, an unpublished case involving "the REAL Voluntary Employees' Beneficiary Association ('REAL VEBA') Trust," which was formed by an "unincorporated association of unrelated employers" to "offer[] employee welfare benefit plans, including death benefit plans." 646 F. App'x 230, 233 (3d Cir. 2016). The court held that the "plan assets" of each individual employer's ERISA plan included the assets in the multi-employer trusts, because "[t]he governing documents ma[d]e clear that employees as plan participants [we]re to be considered beneficiaries under the [multi-employer] plan." *Id.* at 237. *Koresko* did not involve RMBS trusts. It did not involve the look-through exception. And it is irrelevant.

Plaintiffs also cite *Ret. Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*, which addresses "whether the provisions of the Trust Indenture Act of 1939 . . . impose obligations on the trustees of RMBS trusts governed by pooling and servicing agreements ('PSAs')." 775 F.3d 154, 155 (2d Cir. 2014). Plaintiffs misread this decision, too. They say *Retirement Board* "held that pass-through certificates were equity investments not subject to the Trust Indenture Act." Fund Br. 15. Not so. The defendant "argue[d] that the New York certificates [at issue were] exempt under § 304(a)(1) of the [Trust Indenture Act] . . . because they [were] equity securities, not debt securities." *Retirement Board*, 775 F.3d at 164. But the Second Circuit *declined to reach the issue*. *See id.* at 165 ("We need not decide . . . whether the New York certificates qualify as 'debt.'"). The court determined that the certificates satisfied a separate Trust Indenture Act exception (for "certificate[s] of interest or participation"). *Id. Retirement Board* did not address the debt-versus-equity issue at all.

The final case on which Plaintiffs rely is *Carver v. Bank of New York Mellon*, which is about "American Depositary Receipts ('ADRs') . . . [each of which] represent[s] a specified

number of shares in a foreign corporation."  2017 WL 1208598, at *1 (S.D.N.Y. Mar. 31, 2017).

In *Carver*, the court held that the dividends and interest payments from the ADRs at issue

constituted the "plan assets" of several benefit plans because (i) the plans owned the ADRs and

(ii) the plans' "equitable rights" set forth in the ADR contract—such as the plans' rights to

redeem their ADRs by exchanging them for the shares of the foreign corporation, to direct their

shares' votes, and to receive cash distributions—"g[a]ve rise to, at least, a beneficial ownership

interest" in the shares.  *Id.* at *6, 7.  *Carver* did not involve RMBS trusts (or trusts at all).  And

the court in *Carver* expressly declined to address the only argument in the case that was based on

DOL's look-through exception.  *See id.* at *8 n.9.  *Carver* is entirely inapposite.

Indeed, the At-Issue Regular Interest Certificates are not at all comparable to the ADRs in

*Carver*.  In *Carver*, an ADR "represent[ed] a specified number of shares in a foreign

corporation," and ADR owners had "the right to exchange ADRs for the underlying [foreign

s]ecurity itself."  *Id.* at *1, 7.  Here, by contrast, the At-Issue Regular-Interest Certificates do not

"represent" the mortgages held in the Trusts.  Whereas ADR instruments allow "domestic

investors to purchase foreign securities without the hassle of foreign currency exchange and with

all the protections afforded to domestic entities holding a United States Security," *id.* at *2, there

is no suggestion that Plaintiffs purchased the At-Issue Regular-Interest Certificates in lieu of

buying the mortgages themselves.  And Plaintiffs cannot exchange the At-Issue Regular-Interest

Certificates for the underlying mortgages held in the Trusts.

Further, there is no equivalence between owning a regular-interest certificate and owning

the underlying mortgages.  The At-Issue Regular-Interest Certificates pay fixed interest rates that

differ from the underlying mortgages' interest rates.[4]  The At-Issue Regular-Interest Certificates

---

[4] With respect to Trust CSFB 2003-27, the Fund's Class VIII A-1 regular-interest certificates pay a fixed rate of 6%, even though the weighted-interest average rate for the 265 loans underlying this certificate class is

do not convey to their holder the full benefits of mortgagors' principal prepayments or

prepayment penalties—instead, their holder began receiving a decreasing share of principal

prepayments five years after the first distribution date, and (at least for Trust CSFB 2003-27 and

Trust MASTR 2003-5) their holder has *no rights* to receive any prepayment penalties on the

underlying mortgages.  WF/Ocwen SOMF ¶¶ 266-69; WF/Ocwen Add. SOMF ¶¶ 4, 7.  Nor do

the At-Issue Regular-Interest Certificates convey to their holder the full risks of owning the

mortgages.  For example, for all three REMIC Trusts, principal and interest collected from loans

supporting *other* certificate classes can be siphoned off in certain circumstances to make

principal and interest payments to holders of the certificate classes in which the Fund invested.

WF/Ocwen SOMF ¶¶ 249-50.  The Fund owns the At-Issue Regular-Interest Certificates, and not

the mortgages—and the two are not functionally equivalent.  For this reason, too, *Carver* is

inapposite.

Finally, Plaintiffs rely on DOL Advisory Opinion 1996-23A as supposed support for their

argument that the At-Issue Regular-Interest Certificates are plan assets.  Fund Br. 12-14.  That

reliance is misplaced for several reasons.

*First*, the Advisory Opinion expressly "*assume[d]*" that the "trust certificates in question

[were] *not publicly-offered*."  U.S. Dep't of Labor, Advisory Opinion Letter 1996-23A 2 n.1

(Oct. 23, 1996) (hereinafter "Advisory Op.") (emphases added).  But Plaintiffs cannot benefit

from a similar assumption at summary judgment.  *See* Fed. R. Civ. P. 56(c).  In order to prevail,

---

higher—6.445%.  WF/Ocwen Add. SOMF ¶ 2.  With respect to Trust MASTR 2003-5, the Fund's Class 4-A-1
regular-interest certificates pay a fixed interest rate of 5.5%, while the weighted-average rate for the 2,172 loans
underlying this class is a higher rate of 6.064%.  *Id.*  And with respect to Trust GSR 2005-7F, the Fund's Class 2A-6
regular-interest certificates pay a fixed rate of 5.5%, while the weighted-average rate for the 562 loans underlying
this class is a higher rate of 5.869%.  *Id.*

they must establish that the "n[ot] . . . publicly-offered" requirement of the look-through

exception is satisfied.  29 C.F.R. § 2510.3-101(b)(1).  They have not done so.  *See supra* Part I.

*Second*, the Advisory Opinion does not address the distinction between regular-interest

and residual-interest REMIC certificates.  Indeed, it does not appear that an opinion was even

requested on this topic—instead, DOL was asked about certificates representing a right "to claim

a portion of the interest paid on the underlying debt instruments from the trust at the times and in

the amount specified in the certificate."  Advisory Op. 2.  Consequently, DOL did not even

purport to address the characteristics or categorization of regular-interest certificates.  The

Advisory Opinion provides no guidance on the issue.

*Third*, the Advisory Opinion itself acknowledges its own limited "effect" by citing to

ERISA Procedure 76-1.  Advisory Op. 2.  Under Procedure 76-1, DOL advisory opinions apply

only to the precise factual "situation described therein," and thus "[o]nly the parties described in

the request for opinion may rely on [them]."  41 Fed. Reg. at 36,282-83; DOL, *ERISA Procedure

76-1*, https://tinyurl.com/qusmpah (last visited April 17, 2020) (same).  The Advisory Opinion is

thus a narrow, non-precedential analysis limited to a closed universe of facts.  It does not

announce a broad rule of prospective, general applicability.  *See, e.g.*, *Bd. of Trs. of CWA/ITU

Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 145 (2d Cir. 1997) (applying ERISA

Procedure 76-1); *Retirement Board*, 2013 WL 593766, at *3; *accord In re Daley*, 717 F.3d 506,

509 (6th Cir. 2013); *McCoy v. MIT*, 950 F.2d 13, 23 (1st Cir. 1991).

*Finally*, the Advisory Opinion's "cursory" analysis is unpersuasive and does not warrant

deference.  *Retirement Board*, 2013 WL 593766, at *3.  Indeed, a judge in this district—to

Ocwen's and Wells Fargo's knowledge, the only judge who has considered the opinion in a

publicly available decision—refused to defer to the Advisory Opinion because it was conclusory

and "lack[ed] persuasive power." *Id.* And the cases that Plaintiffs cite—*In re Halpin*, 566 F.3d 286 (2d Cir. 2009), and *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639 (8th Cir. 2007)—relate to *other* advisory opinions and cannot shore up the scant reasoning in this one. A more careful, comprehensive analysis is necessary to evaluate any particular series of residential-mortgage-backed notes or certificates under the plan-assets regulation. Here, that analysis unmistakably leads to the conclusion that the mortgages are not plan assets and that Plaintiffs' arguments on summary judgment—and their claims as a whole—must fail.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for partial summary judgment should be denied.

April 17, 2020

ORRICK, HERRINGTON
& SUTCLIFFE LLP

 /s/ Richard A. Jacobsen
_____

Richard A. Jacobsen
Thomas N. Kidera
Aaron M. Rubin
51 West 52nd Street
New York, NY 10019
(212) 506-5000
rjacobsen@orrick.com
tkidera@orrick.com
amrubin@orrick.com

Kenneth Herzinger
405 Howard Street
San Francisco, CA 94105
(415) 773-5700
kherzinger@orrick.com

*Attorneys for Ocwen*

Respectfully submitted,

JONES DAY

 /s/ Howard F. Sidman
_____

Howard F. Sidman
Amanda L. Dollinger
250 Vesey Street
New York, NY 10281
(212) 326-3939
hfsidman@jonesday.com

Evan Miller (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939
emiller@jonesday.com

Benjamin G. Minegar (*pro hac vice*)
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
bminegar@jonesday.com

*Attorneys for Wells Fargo*

## CERTIFICATE OF SERVICE

I certify that, on April 17, 2020, I caused the foregoing to be electronically filed with the

Clerk of Court using the CM/ECF system.

*/s/ Howard F. Sidman*
Howard F. Sidman